ORIGINAL

FILED IN CLERK S OFFICE
U.S.D.C.-Atlanta

JAN 21 2005

LUTHER D. THOMAS, Clerk
By: _____
          Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

H D MASSENGALE, WILLIAM T.
GLAZE; LARRY A BARTLETT,
ROBERT L. MANN,
MICHAEL R COLLINS: THOMAS
D. WARD; GREG HARALSON;
STEPHANIE L. GLENN; BELINDA
A LUMPKIN, MICHAEL G
MADDOX, BRIAN C CRISP, KIM
T. SMITH, LEIGH D CASH;
GARLAND L.WATKINS, SAMUEL
W SMITH, CHARLOTTE I NELSON;
ANGELO DANIEL, MARC A.
JORDAN; JIMMY A FALLINS;
PERRY JOINER, LEONTYNE DANIEL,
PAUL E BARNES; WILLIAM J.
WATSON, CONCHETA S
RICHARDS; CARLOS GLENN,
VICTORIA ECKLER, and JONATHAN
MANNING,

       Plaintiffs,

vs

VICTOR HILL, Individ-
ually and in his official capacity as
Sheriff of Clayton County, Georgia.
WILLIAM T. CASSELLS,
Individually and in his official capacity
as Chief Deputy of the Clayton County
Sheriff's Office; REGINALD
LAMONT LINDSEY
Individually and in his official capacity
as employee/agent of the Clayton

:
.
.

.

:
:

.

:
:
.

.
.

.

.
:

:
.
.

:
:
:

.

:

:

:
.

.

:

:
.
.

CIVIL ACTION FILE
NO. 1 05-CV 0189

CAM

**JURY TRIAL DEMANDED**

FORMS RECEIVED
Consent To US Mag
Pretrial Instructions
Title VII NTC

County Sheriff's Office;                    :
R. ANDRES MARIEROSE;                        :
Individually and in his official capacity   :
as employee/agent of the Clayton County     :
Sheriff's Office,  MARK J. HARRIS,          .
Individually and in his official capacity
as employee/agent of the Clayton           .
County Sheriff's Office; TIMOTHY           .
HANNER, Individually and in his official    :
capacity as employee/agent of the          .
Clayton County Sheriff's Office;           .
SHON HILL,  Individually and in his        .
official capacity as employee/agent of      :
the Clayton County Sheriff's Office,
JON ANTOINE, Individually and in his       .
official capacity as employee/agent of     .
the Clayton County Sheriff's Office;        :
CLAYTON COUNTY SHERIFF'S                   .
OFFICE; JOHN DOES 1-5, JOHN
DOES 6-10,

      Defendants                          .

## COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES

NOW COME the above-named Plaintiffs and pursuant to 42 U.S C §§1981,

1983 and 1985, and 28 U.S.C. §2201, hereby submit their Complaint against the

above-named Defendants on the following grounds.

## JURISDICTION AND VENUE

1.

This Court has jurisdiction over the matter pursuant to 28 U.S C. §1331 and

1343

2.

Venue in this district and division is proper under 28 U.S.C. §1391 as some or all of the Defendants are located in the Northern District of Georgia, Atlanta Division, and the unlawful conduct complained of herein occurred in this district and division.

## **PARTIES**

3.

Each of the twenty-seven (27) Plaintiffs were employed by Defendant Clayton County until they were summarily and involuntarily terminated without cause by Defendant Hill acting in concert with Defendants Cassells, Marierose, Lindsey; Harris, Hanner, S Hill, and Antoine, on January 3, 2005.

4

At the time of their terminations, Plaintiffs were employed by Clayton County, Ga., and were assigned to the Clayton County Sheriff's Office. ("CCSO").

5

At the time of their terminations, none of the Plaintiffs were employed by the State of Georgia.

6

At the time of Plaintiffs' unlawful terminations, the average length of their service with the CCSO was 17.62 years. The average length of service of the white plaintiffs was 19.07 years, while the average length of service of black plaintiffs was 14 21 years. The average age of the white Plaintiffs was 45.21, while the average age of black employees was 39.20. The Plaintiffs are all citizens of the United States entitled to bring actions of this kind and nature.

7

Plaintiff H.D Massengale is a white male, born on August 27, 1956. At the time he was fired, he was an employee of Clayton County, Ga., holding the position of Major within the CCSO Massengale was initially hired on August 23, 1975. Upon information and belief, Massengale has been replaced by a younger black individual.

8.

Plaintiff William T. Glaze is a white male, born on September 13, 1953 At the time he was fired, he was an employee of Clayton County, Ga., holding the position of Captain within the CCSO. Glaze was initially hired on May 28, 1976 Upon information and belief, Glaze has been replaced by a younger, black individual.

9.

Plaintiff Larry A Bartlett is a white male, born on May 5, 1956. At the time he was fired, he was an employee of Clayton County, Ga., holding the position of Major within the CCSO. Bartlett was initially hired on January 24, 1977. Upon information and belief, Bartlett has been replaced by a younger, black employee.

10.

The Plaintiff Robert L. Mann is a white male, born on March 18,1933. At the time he was fired, he was an employee of Clayton County, Ga., holding the position of Deputy Sheriff within the CCSO. Mann was initially hired in February of 1977.

11.

Plaintiff Michael R Collins is a white male, born on September 2, 1950. At the time he was fired, he was an employee of Clayton County, Ga., holding the position of Captain within the CCSO. Collins was initially hired on January 16, 1978.

12

Plaintiff Thomas D Ward is a white male, born on October 25, 1958. At the time he was fired, he was an employee of Clayton County, Ga., holding the position of Lieutenant within the CCSO. Ward was initially hired on March 15, 1978.

13.

Plaintiff Greg Haralson is a white male, born on December 26, 1958. At the

time he was fired, he was an employee of Clayton County, Ga., holding the position of Captain within the CCSO. Haralson was initially hired on October 1, 1979.

14.

Plaintiff Stephanie L. Glenn is a black female, born on August 9, 1960. At the time she was fired, she was an employee of Clayton County, Ga., holding a civilian administrative position within the CCSO. Glenn was initially hired on October 26, 1979.

15.

Plaintiff Belinda A. Lumpkin is a white female, born on October 19, 1949. At the time she was fired, she was an employee of Clayton County, Ga., holding the position of Deputy Sheriff within the CCSO. Lumpkin was initially hired on March 31, 1980.

16.

Plaintiff Michael G. Maddox is a white male, born on August 2, 1957 At the time he was fired, he was an employee of Clayton County, Ga., holding the position of Major within the CCSO. Maddox was initially hired on October 15, 1982. Upon information, Maddox has been replaced by a younger, black individual.

17.

Plaintiff Brian Crisp is a white male, born on May 3, 1964. At the time he was

-6-

fired, he was an employee of Clayton County, Ga., holding the position of Sergeant within the CCSO. Crisp was initially hired in July of 1983.

18.

Plaintiff Kim T Smith is a black male, born on May 18, 1963. At the time he was fired, he was an employee of Clayton County, Ga., holding the position of Lieutenant within the CCSO. Smith was initially hired on September 1, 1985.

19.

Plaintiff Leigh D. Cash is a white female, born on June 4, 1965. At the time she was fired, she was an employee of Clayton County, Ga., holding the position of Lieutenant within the CCSO. Cash was initially hired on June 23, 1986.

20.

Plaintiff Garland Watkins is a black male, born on June 15, 1962. At the time he was fired, he was an employee of Clayton County, Ga., holding the position of Lieutenant within the CCSO Watkins was initially hired in October of 1986.

21.

Plaintiff Samuel W Smith is a white male, born on September 3, 1959. At the time he was fired, he was an employee of Clayton County, Ga., holding the position of Captain within the CCSO Smith was initially hired on February 12, 1987.

22.

Plaintiff Charlotte I Nelson   is a black female, born on September 27, 1959. At the time she was fired, she was an employee of Clayton County, Ga., holding the position of Lieutenant within the CCSO.  Nelson   was initially hired on March 31, 1987.

23

Plaintiff Angelo Daniel   is a black male, born on September 5, 1963. At the time he was fired, he was an employee of Clayton County, Ga., holding the position of Captain within the CCSO.  Daniel   was initially hired on September 14, 1987 Plaintiff Daniel is married to Co-Plaintiff Leontyne Daniel.

24.

Plaintiff Marc Jordan   is a white male, born on June 13, 1966. At the time he was fired, he was an employee of Clayton County, Ga., holding the position of Deputy Sheriff within the CCSO.  Jordan   was initially hired in January of 1988.

25.

Plaintiff Jimmy Fallins   is a white male, born on February 19, 1943. At the time he was fired, he was an employee of Clayton County, Ga., holding the position of Deputy Sheriff within the CCSO  Fallins was initially hired on October 28, 1988.

26.

Plaintiff Perry Joiner   is a white male, born on August 18, 1962  At the time he was fired, he was an employee of Clayton County, Ga., holding the position of Lieutenant within the CCSO. Joiner was initially hired in April of 1989

27

Plaintiff Leontyne Daniel    is a black female, born on November 20, 1966. At the time she was fired, he was an employee of the Clayton County, Ga., holding the position of Lieutenant within the CCSO. Daniel was initially hired on January 15, 1996  Plaintiff Daniel is married to co-plaintiff Angelo Daniel

28.

Plaintiff Paul Barnes   is a white male, born on January 16, 1968. At the time he was fired, he was an employee of the Clayton County, Ga., holding the position of Correctional Officer-Sergeant  within the CCSO. Barnes was initially hired in June of 1999.

29.

Plaintiff William Watson   is a white male, born on January 28, 1968. At the time he was fired, he was an employee of the Clayton County, Ga., holding the position of Deputy Sheriff  within the CCSO. Watson   was initially hired on

November 29, 1999.

30.

Plaintiff Concheta Richards    is a black female, born on November 5, 1977

At the time she was fired, she was an employee of the Clayton County, Ga., holding

the position of Correctional Officer within the CCSO. Richards was initially hired

on April 2, 2001.

31.

Plaintiff Carlos Glenn   is a black male, born on August 31, 1971. At the time

he was fired, he was an employee of the Clayton County, Ga., holding the position

of Deputy Sheriff within the CCSO. Glenn was initially hired on July 17, 2001.

32.

Plaintiff Victoria Eckler    is a white female, born on November 23, 1977. At

the time she was fired, she was an employee of the Clayton County, Ga., holding the

position of Correctional Officer within the CCSO. Eckler was initially hired on

October 10, 2001.

33.

Plaintiff Jonathan Manning   is a white male, born on August 5, 1983. At the time he was fired, he was an employee of the Clayton County, Ga., holding the position of Deputy Sheriff within the CCSO. Manning was initially hired on 10/10/02

34

The Defendant Victor Hill assumed office as the elected Sheriff of Clayton County, Georgia, on January 1, 2005. Hill is a black male, age 39.

35.

As Sheriff of Clayton County, Ga., Hill is a "County Officer" pursuant to the Georgia Constitution Ga Const. Art IX, Par. III The unlawful actions of Defendant Hill described herein, including but not limited to personnel decisions (firings, demotions, discriminatory and retaliatory work assignments, transfers, and shift changes, and the deliberate creation of an openly hostile and dangerous work environment),   were undertaken in his role as a County Officer, and not were not undertaken in any role as an "arm of the State "

36

Suits against Hill in his official capacity as Sheriff of Clayton County are the

legal equivalent of suits against Clayton County, Ga. Gilbert v Richardson, 264 Ga. 744, 452 S.E.2d 476 (1994)(suits against Sheriff in official capacity are "in essence, claims against [the] County"); Ward v. Allstate Insurance, 265 Ga.App 603, 595 S E 2d 97 (2004)(suit against Deputy Sheriff "in his official capacity.. would have acted as a suit against Houston County "); Soley v Dodson, 256 Ga App. 770, 569 S.E 2d 870 (2002)(suit against Deputy Sheriff "in his capacity as Deputy Sheriff seeks a recovery from the employing county"), Seay v. Cleveland, 270 Ga. 64, 508 S E 2d 159 (1998)(Sheriff's entitlement to defense of sovereign immunity dependent on whether County waived sovereign immunity defense); Anderson v Cobb, 258 Ga.App. 159, 573 S.E.2d 417 (2002)(same); Standard v Hobbs, 263 Ga.App 873, 589 S E 2d 634(same)

### 37.

In his capacity as Sheriff,  Hill possesses final decision-making authority for Clayton County  with regards to the hiring, firing, promotion, demotion, and suspension of all County Personnel assigned to the Sheriff's Office. In taking such personnel  actions, Hill acts as an agent of, and acts for and  on behalf of,  Clayton County, Ga.  In taking such personnel  actions, Hill  does not act as an agent of, and does not act  for or on  behalf of the State of Georgia.  As concerns personnel actions, therefore. Defendant Sheriff Hill  does not act as "an arm of the State."

38.

The actions of Defendant Hill described herein, and the actions of the other individual defendants, were committed in their role as County officials, not "State" officials, but were committed, in any event, under color of state and local law.

39

Defendants V. Hill, Cassells, Lindsey, Marierose, Harris, Hanner, S Hill, and Antoine, sued in their individual capacities, may be served with process by way of personal service of the summons and complaint process to them at their business address of 9157 Tara Boulevard, Jonesboro, Ga. 30236.

40.

Defendant Hill, named in his Official Capacity as Sheriff of Clayton County, may be served with process by way of personal service of the summons and complaint on Eldrin Bell, Chairman, Clayton County Board of Commissioners, at his business address of 112 Smith Street, Jonesboro, Ga., 30236.

41

Defendants Cassells, Lindsey, Marierose, Harris, Hanner, S. Hill, and Antoine, named in their Official Capacities as agents and employee of the Clayton County Sheriffs Office, may be served with process by way of personal service of the

-13-

summons and complaint on  Eldrin Bell, Chairman, Clayton County Board of Commissioners, at his business address of 112 Smith Street, Jonesboro, Ga., 30236.

42.

To the extent that the Court might determine that Defendant Hill and/or any of Defendants named in their  official capacities as Sheriff  of Clayton County or employees/agents of the CCSO  were acting as an arm of the State  in committing the unlawful acts described herein,  service may be effected on the State of Georgia via personal service of the summons and complaint  on Governor Sonny Purdue at his business address of Office of the Governor Georgia State Capitol Atlanta, Ga. 30334.

43.

The Defendant  Clayton County Sheriff's Office ("CCSO")  is a public body or organization subject to an action within the meaning of O C.G A. §9-11-4, and is an "unincorporated association" within the meaning of Fed. R  Civ. P  17(b)(1), and is therefore properly subject to suit.  CCSO may be served with process via personal service of the summons and complaint on Victor Hill, at his business address of 9157 Tara Boulevard, Jonesboro, Georgia, 30236, **and** via personal service of the summons and complaint to Eldrin Bell, Chairman of the Clayton County Board of Commissioners at his business address of 112 Smith Street, Jonesboro, Ga , 30236.

44

To the extent that the Court might determine that Defendant CCSO was acting as an arm of the State in committing, ordering, directing, authorizing, permitting, condoning, ratifying, or acquiescing in the unlawful acts described herein, service may be effected on the State of Georgia by personal service of the summons and complaint on Governor Sonny Purdue at his business address of Office of the Governor Georgia State Capitol Atlanta, Ga. 30334

45.

The Defendant William T. Cassells is a black male, whom, upon information and belief, has been appointed by Defendant Hill to the position of Chief Deputy of the Clayton County Sheriff's Office. Cassells is jointly employed by Clayton County, Ga. and the CCSO, and is not an employee of the State of Georgia. The actions of Cassells complained of herein, like those of Defendant Hill, were committed in his role as an employee/agent of the CCSO and Clayton County, Ga., and were not committed as an "arm of the State." Defendant Cassells may be served with process via personal service of the summons and complaint at his business address of 9157 Tara Boulevard, Jonesboro, Ga 30236

-15-

46.

The Defendant Reginald Lamont Lindsey is a black male, whom, upon information and belief has been appointed by Defendant Hill to an unspecified, high-ranking position within the Clayton County Sheriff's Office. Lindsey is a jointly employed by Clayton County, Ga. and the CCSO, and is not an employee of the State of Georgia   The actions of Lindsey complained of herein, like those of Defendant Hill, were committed in his role as an agent of Clayton County, Ga. and/or the CCSO and were not committed as an "arm of the State."   Defendant Lindsey may be served with process via personal service of the summons and complaint at his business address of 9157 Tara Boulevard, Jonesboro, Ga 30236.

47.

The Defendant R. Andres Marierose is a black male, whom, upon information and belief has been appointed by Defendant Hill to an unspecified, high-ranking position within the Clayton County Sheriff's Office. Marierose currently represents himself to hold the position of "Legal Advisor" within the Clayton County Sheriff's Office. Marierose is jointly employed by the CCSO and Clayton County, Ga , and is not an employee of the State of Georgia. The actions of Marierose complained of herein, like those of Defendant Hill,  were committed in his role as an agent of

-16-

Clayton County, Ga. and/or the CCSO, and were not committed as an "arm of the State" Defendant Marierose may be served with process via personal service of the summons and complaint at his business address of 9157 Tara Boulevard, Jonesboro, Ga. 30236.

48.

The Defendant Mark J. Harris is a black male, whom, upon information and belief has been appointed by Defendant Hill to an unspecified, high-ranking position within the Clayton County Sheriff's Office Harris is jointly employed by Clayton County, Georgia and the CCSO, and is not an employee of the State of Georgia. The actions of Harris complained of herein, like those of Defendant Hill, were committed in his role as an agent of Clayton County, Ga. and the CCSO, and were not committed as an "arm of the State." Defendant Harris may be served with process via personal service of the summons and complaint at his business address of 9157 Tara Boulevard, Jonesboro, Ga. 30236

49.

The Defendant Timothy Hanner is a white male, whom, upon information and belief has been appointed by Defendant Hill to an unspecified, high-ranking position within the Clayton County Sheriff's Office. Hanner is jointly employed by Clayton

-17-

County, Ga. and the CCSO and is not an employee of the State of Georgia The actions of Hanner complained of herein, like those of Defendant Hill, were committed in his role as an agent of Clayton County, Ga. and/or the CCSO, and were not committed as an "arm of the State." Defendant Hanner may be served with process via service of the summons and complaint at his business address of 9157 Tara Boulevard, Jonesboro, Ga. 30236.

50

The Defendant Shon Hill is a black male, whom, upon information and belief has been appointed by Defendant Hill to an unspecified, high-ranking position within the Clayton County Sheriff's Office. Hill is an employee of Clayton County, Georgia and/or the CCSO, and is not an employee of the State of Georgia The actions of Hill complained of herein, like those of Defendant Hill, were committed in his role as an agent of Clayton County, Ga and/or the CCSO and were not committed as an "arm of the State " Defendant S. Hill may be served with process via service of the summons and complaint at his business address of 9157 Tara Boulevard, Jonesboro, Ga. 30236.

51.

The Defendant Jon Antoine is a black male, whom, upon information and belief has been appointed by Defendant Hill to an unspecified, high-ranking position within the Clayton County Sheriff's Office. Antoine is jointly employed by Clayton County, Ga. and the CCSO and is not an employee of the State of Georgia. The actions of Antoine complained of herein, like those of Defendant Hill, were committed in his role as an agent of Clayton County, Ga. and/or the CCSO and were not committed as an "arm of the State" Defendant Antoine may be served with process via service of the summons and complaint at his business address of 9157 Tara Boulevard, Jonesboro, Ga. 30236.

54

Defendants John Doe 1-5 are other individuals employed by, or acting on behalf of the CCSO and Clayton County, Ga, whose identities are currently unknown, who also participated in the conspiracy detailed herein and/or personally participated in the other unlawful conduct detailed herein.

55.

Defendants John Doe 6-10 are other individuals not employed by CCSO whose identities are presently unknown, who also participated in the conspiracy

detailed herein and/or who personally participated in the tortious and unlawful conduct described herein.   Upon information and belief, at least two other law enforcement officers from other jurisdictions (Dekalb County and Fulton County) were present and personally participated for the mass firing and other misconduct which occurred on January 3, 2005, as described in detail herein.

## FACTUAL ALLEGATIONS

### 56.

Defendant V Hill, then employed as a Police Officer in the Clayton County Police Department, was a candidate for the elected position of Sheriff of Clayton County during 2004.

### 57.

Defendant V. Hill faced at least  two opponents during the Democratic primary—incumbent Sheriff Stanley Tuggle, and Joe Mack Eckler.

### 58.

During the primary campaign, Plaintiffs Massengale, Bartlett, Maddox, Glaze, Collins, Ward, A. Daniel, L Daniel, K. Smith, Jordan, Barnes, Joiner, Crisp, Cash, Watkins, Haralson, Mann, S. Smith; and S. Glenn were active and publicly known supporters of incumbent Sheriff Tuggle  Some or all of these Plaintiffs openly and

publicly spoke on behalf of Sheriff Tuggle, and/or lent support by way of financial contributions or devoting time to Tuggles's Campaign.

59.

During the primary campaign, Plaintiffs Manning, Lumpkin, C. Glenn, Nelson, Richards and Watson refused to publicly support Defendant Hill's candidacy for Sheriff

60.

During the primary campaign, Plaintiff Eckler was married to, and openly supported the candidacy of her Husband, Joe Mack Eckler, for the position of Sheriff.

61.

Prior to January 3, 2005, the individual defendants were aware of the Plaintiffs' political speech and support, and political affiliation and association, as set forth in Pars 58 and 59.

62

Plaintiff Lumpkin is the niece of Clayton County Commissioner J. Charley Griswell, a known political rival and opponent of Defendant V. Hill.

63.

Both prior and subsequent  to January 3, 2005, Defendants Hill, Cassells,

Lindsey, Marierose, Harris, Hanner, S. Hill, Antoine,  and John Does 1-5 and 6-10,

reached  an agreement and  formed a  plan that upon Hill's assumption of the office

of Sheriff, they would, acting in concert, terminate certain employees of the Sheriff's

Office,  including the Plaintiffs,  without cause, and without due process of law,

based on  the race and/or age and/or political association and/or political speech

and/or intimate and/or familial associations of the affected employees, and would

thereafter attempt to cover up their unlawful motives by making false allegations of

misconduct against the illegally fired employees, including the making of  baseless

allegations of  corruption, dishonesty, misfeasance, and  malfeasance[1] against said

unlawfully fired employees.

64

The  actions  contemplated in this conspiracy were in  fact carried  by the

individually-named Defendants (or by others acting  on their behalf, either at their

direction, or  with their knowledge and approval)  beginning on and before  January

3, 2005. Such actions in furtherance of this conspiracy and have  continued each day

---

[1]Plaintiffs enumerate "age" as one of Defendants' motivations purely as a factual matter,
but explicitly do NOT  presently  assert any claim of age discrimination at present

as of the filing of this action.

65.

As a part of their plot, Defendants Hill, Cassells, Lindsey, Marierose, Harris, Hanner, Hill, Antoine, and John Does 1-10 consciously decided and agreed to, and subsequently did, carry out the termination of Plaintiffs' employment in the most publicly humiliating, insulting, oppressive, harassing and intimidating means possible. This would be and was done, the Defendants agreed, not only to abuse, harass, and intimidate the Plaintiffs themselves for unlawful discriminatory (race, gender and age) and retaliatory reasons, including political revenge, but also for the purpose of chilling the exercise of the free speech and association rights of remaining employees, by putting them in fear of losing their jobs via the creation of a hostile, abusive and oppressive work environment.

66

As pertains to Plaintiffs' unlawful firings, in carrying out their race, age, and politically-inspired plot, Defendants Hill, Cassells, Lindsey, Marierose, Harris, Hanner, Hill, Antoine, and John Does 1-10, acting in concert, committed the following acts (and/or authorized, directed, ratified, condoned or acquiesced in them): (a) lying to the Plaintiffs by telling them to gather for the purpose of being "sworn-

-23-

in" by Defendant Hill; (b) publicly stripping the Plaintiffs of their badges, ID cards; keys and other personal belongings and County property; ( c) surrounding the Plaintiffs with armed guards while still in the Jail facility; (d) abruptly announcing to the Plaintiffs that rather than being sworn in, they were being fired; (e) ordering and directing the Plaintiffs to keep silent and to behave in a specified manner; (f) forcibly restricting Plaintiffs' freedom of movement in a menacing, hostile and intimidating manner; (g) confiscating Plaintiffs' personal property; (h) putting the Plaintiffs in reasonable fear of their well-being and safety by posting armed gunmen in the jail and snipers on the roof of the jail facility; (i) authorizing the use of deadly force against the Plaintiffs; (j) directing the plaintiffs that for those without transportation, they would be transported him in a Prisoner Van; (k) deliberately and callously ignoring Plaintiffs' rights to advance notice of their termination and the supposed reasons therefor, and an opportunity to be heard.

67.

Defendant V. Hill and his co-conspirators when to the extraordinary lengths of issuing, for the first time in the history of the Clayton County Cert team, electronic "stun" weapons commonly known as "Tasers"—for possible use against the Plaintiffs.

68.

At the time of their summary terminations, as employees of Clayton County, Ga., pursuant to State and Local Law, all of the Plaintiffs were classified members of and were protected by the Clayton County Civil Service Act. Pursuant to the Act, Plaintiffs could not be discharged, demoted, or suspended except for just cause. See, Ga L 1963, p 681; Ga. L. 1963, p.2747; Clayton County Resolution No 65-9, Clayton County Resolution No 65-10; Ga. L. 1968, p 2759; Ga. 1986, p 5573, Ga. L 1994, p.4339. Plaintiffs therefore possessed a property interest in their continued public employment.

69.

As public employees possessed of a property interest in their continued employment, Plaintiffs were entitled to (1) ADVANCE notice of the charges against them; (2) an explanation of the employer's evidence; and (3) an opportunity to present their sides of the story. Cleveland Board of Education v. Loudermill, 470 U S 532, 105 S Ct 1487, 84 L Ed.2d 532.

70.

Defendants, acting in concert pursuant to the plan agreed upon in prior conspiratorial deliberations deliberately and wilfully: (1) failed and refused to

provide advance notice of any reasons for termination; (2) failed and refuse to provide any explanation of any evidence to support such reasons; and (3) failed and refused to provide Plaintiffs an opportunity to present their sides of the story. As of the date of the filing of this Complaint, Defendants have failed and refused to provide any notice whatever as to any supposed reason or justification for their firings, despite a specific written request for same.

71.

Defendant Chief Cassells has himself previously benefitted from the County Civil Service System and the Rules and Regulations of the Clayton County Civil Service System , having previously challenged at least one disciplinary action imposed on him by a previous Sheriff, by way of appeal to the Clayton County Civil Service Board

72.

Defendants Hill, Cassells, Lindsey, Marierose, Harris, Hanner, Hill, and Antoine, knew at the time they committed and/or authorized the above actions that Plaintiffs were protected by the County Civil Service System and entitled to its protections, yet consciously and deliberately chose to fire the Plaintiffs without notice, hearing or cause in direct contravention of Ga. L 1994 p. 4339, and in direct

contravention of the Rules and Regulations of the Clayton County Civil Service System.

73.

For the purpose of exposing official misconduct on the part of the Defendants, and for the purpose of revealing an protesting Defendants' unlawful conduct and to protest against same, for the purpose of acting collectively and in concert to secure mutual aid, comfort and assistance, and for the purpose of petitioning their government, subsequent to Plaintiffs unlawful terminations, they formed a group, and properly filed grievances/appeals with the Clayton County Personnel Department to challenge their unlawful firings.

74

Subsequent to Plaintiffs' unlawful terminations, acting as a group they secured Counsel, who, acting on their group behalf, protested directly to Defendant V Hill regarding his unlawful employment practices, including race, gender, and age discrimination

75

In direct response to to Plaintiffs' efforts to form a group to bring to light the illegal conduct of the Defendants, and in direct response to the their having formed

such a group and having protested against Hill's unlawful race, gender and age discrimination and political retaliation, Defendants and/or their agents have made or caused to have been made numerous false allegations of misconduct against the Plaintiffs—both in writing and verbally—to the effect that Plaintiffs were guilty of corruption, graft, dishonesty, and/or other acts of misconduct, misfeasance, or malfeasance.

76

Defendants' false allegations referenced in Par. 75 were made for the purpose of attempting to conjure up a pretextual, after-the-fact, post-hoc justification for Plaintiffs' firing, where no legitimate explanation in fact existed, and were in retaliation for Plaintiffs' protests against Defendants' unlawful discriminatory practices, and were made for the purpose of obstructing justice and intimidating and harassing parties to and possible witnesses in a federal suit

77.

Defendants took the actions set forth above in Pars. 65, 66, 70, and 75 including the illegal firings of the Plaintiffs in order to punish Plaintiffs Massengale; Glaze; Bartlett. Collins, Ward; Haralson, Lumpkin, Maddox; Crisp; Cash; Samuel Smith, Fallins; and Joiner based on. (1) their political affiliation and/or speech,

including support of Defendant Hill's political opponents and rival candidates, including but not limited to supporting former Sheriff Stanley Tuggle; (2) their failure or refusal to support Hill's candidacy for Sheriff (3) their protected associations, including familial and political associations, (4) their race, white, and (5) their age

78.

Defendants took the actions set forth above in Pars. 65, 66, 70 and 75, including the illegal firings of the Plaintiffs, in order to punish Plaintiffs Cash, Jordan, Barnes, Watson, Eckler, and Manning, based on: (1) their political affiliation and or speech, including support of Defendant Hill's political opponents and rival candidates, including but not limited to former Sheriff Stanley Tuggle; (2) their failure or refusal to support Hill's candidacy for Sheriff (3) their protected associations, including familial and political associations; (4) their race, white.

79.

Defendants took the actions set forth above in Pars. 65, 66, 70, and 75, including the illegal firings of the Plaintiffs in order to punish Plaintiffs S. Glenn; K Smith; Watkins; Nelson, and A. Daniel based on: (1) their political support of Defendant Hill's political opponents and rival candidates, including but not limited to former Sheriff Stanley Tuggle; (2) their failure or refusal to support Hill's

candidacy for Sheriff' (3) their protected associations,   including familial and political associations, (4) their race, black, and (5) their age.

80.

Defendants took the actions set forth above in Pars. 65, 66, 70 and 75, including the illegal firings of the Plaintiffs,   in order to punish Plaintiffs L. Daniel; Richards,  and C. Glenn based on. (1)  their political support of Defendant Hill's political opponents and rival candidates, including but not limited to former Sheriff Stanley Tuggle; (2) their failure or refusal to support Hill's candidacy for Sheriff' (3) their protected associations,   including familial and political associations; and (4) their race, black.

81.

Defendants' a ctions i n t erminating a nd o therwise m istreating P laintiffs S . Glenn; Lumpkin, Cash; Nelson, L Daniel; Richards; and Eckler as detailed herein were based on, among other things, their gender, female. Indeed, in one fell swoop, Defendants discharged all three of the CCSO's only female lieutenants (Plaintiffs Cash, Daniel, and Nelson).

82.

Defendants' actions in terminating Plaintiffs A. Daniel, L.Daniel, Lumpkin,

and Eckler, and otherwise mistreating them as set forth herein, was based, in part, on their protected intimate or familial associations, to wit: the relationship of Husband and Wife between Plaintiffs A Daniel and L. Daniel; the relationship of Husband and Wife between Plaintiff Eckler and a rival candidate for Sheriff; and the relationship of Uncle and Niece between Plaintiff Lumpkin and County Commissioner Charlie Griswell—a perceived political opponent of Hill.

### 83.

At the time of Plaintiffs' summary firings, Defendants, without cause or justification, confiscated various items of personal property belonging to the Plaintiffs. Despite repeated demands, Defendants failed and refused to return Plaintiffs' personal property----property of which Plaintiffs were forcibly deprived when they were forcibly escorted under armed-guard to the inmate exit of the jail---thereby c ommitting t he t ort o f c onversion—in retaliation for Plaintiffs' protests against Defendants' discriminatory employment practices, and for the other unlawful purposes set forth in Pars 77-82

### 84.

On the same day as Plaintiffs' unlawful terminations (January 3, 2005), the Clayton County Board of Commissioners initiated a "Petition For Mandamus" against

-31-

Defendant Hill in the Superior Court of Clayton County, Civil Action File No. 2005-CV-16-8.

85.

Defendant V. Hill was immediately ordered by Superior Court Judge Stephen Boswell to "reinstate" the Plaintiffs, to "maintain the status quo", and not to fire other CCSO employees "without a showing of cause, pursuant to the Clayton County Civil Service Act and accompanying Rules and Regulations." A true and accurate copy of said Order is attached hereto as Exhibit "1" The Plaintiffs are not parties to that action. By agreement of the parties to that case, said Order was extended, withou approval of the Court, on January 14, 2005. A true and accurate copy of said Order is attached hereto as Exhibit "2".

86

Rather than complying with said Order, on January 4, 2005, Hill immediately disobeyed it when, rather than "reinstating" the Plaintiffs, he purported to place them on "administrative leave", and publicly declared that Plaintiffs would not return to work until some unspecified future time

87.

While publicly proclaiming that he had complied with Judge Boswell's Order

by placing Plaintiffs on "administrative leave",  Hill in fact took no action whatever

to effectuate the "reinstatement" of the Plaintiffs, or  the placement of the Plaintiffs

on " administrative leave." In this regard, Hill  never notified the pertinent County

agencies/departments (Personnel/Payroll) of Plaintiffs' placement on administrative

leave, most likely due to the fact that there is no provision in the County's governing

Civil Service Rules and Regulations for placement of employees on "administrative

leave" under the circumstances presented.

88.

On about January 7, 2005, Plaintiffs visited the Sheriff's Office for the purpose

of the retrieving their personal property, of which Defendants had  deprived them

since January 3, 2005, despite numerous formal demands for th return of such

property  Plaintiffs' requests that they be permitted to return to their work stations

to gather their personal property was summarily and unjustifiably denied.

89.

On the orders of Defendants V. Hill, Cassells, and Marierose (or with their

knowledge and approval),  Defendants Antoine, Lindsey and Hanner supervised the

spectacle of some (but not all)  of Plaintiffs' property----including furniture, plants,

refrigerators, books, shelving units and the like---- being carted out onto the sidewalk

-33-

of the Courtyard of the Sheriff's Office for the plaintiffs to retrieve and place in their vehicles. Other items of Plaintiffs' personal property was carted out by armed and uniformed Sheriff's Deputies, in brown card board boxes, in a humiliating scene indistinguishable from a public eviction on the sidewalk of a public street. Plaintiffs were, during the entire spectacle, under the watchful eyes of an armed Deputy Sheriff, obviously placed there on the orders of the individual Defendants. To this day, Defendants have failed and refused to return numerous other items of Plaintiffs' property

90.

Plaintiffs repeatedly demanded of Defendant Hill that he comply with Judge Boswell's Order to reinstate them and maintain the status quo, that is, actually reinstating them to the positions they held prior to January 3, 2005 (as set forth above in Pars 7-33), but such demands were utterly ignored.

91.

Notwithstanding Plaintiffs' repeated demands that they actually be reinstated to their positions, from January 4, 2005 until January 11, 2005, Defendants failed and refused to take any action whatever to come in to compliance with Judge Boswell's Order to reinstate the Plaintiffs and to maintain the status quo.

92.

Prior to January 10, 2005, Plaintiffs repeatedly advised Defendant Hill that they would initiate suit in this Court in order to address his misconduct, including unlawful race and gender discrimination, and further advised him of their intention file charges of race, gender and age discrimination and retaliation with the U S Equal Employment Opportunity Commission

93.

On January 10, 2005, Plaintiffs filed an action in this Court, Massengale et al v Hill et al, Civil Action File No 1·05-CV-0083, asserting claims against Defendants V Hill, Cassells, Lindsey, Marierose, Harris, Hanner, S. Hill, and Antoine, , claims for violations of Plaintiffs' First Amendment rights of free speech and association (via 42 U S C. §1983); violations of Plaintiffs Fourteenth Amendment rights to Equal Protection (ie, unlawful race and gender discrimination) (via 42 U S C §1983); violations of Plaintiffs Fourteenth Amendment right to Due Process (ie, deprivation of liberty and property without due process)(via 42 U.S.C. §1983); violations of Plaintiffs rights to be free from racial discrimination in employment (via 42 U.S.C. §1981); violations of Plaintiffs rights to be free from unlawful retaliation (via 42 U.S.C §1981); violations of Plaintiffs Fourth Amendment right to be free from

unlawful search and seizure (via 42 U.S.C. §1983); conspiracy to violate Plaintiffs'

First, Fourth and Fourteenth Amendment rights (via 42 U.S.C. 1983); conspiracy to

violate Plaintiffs Fourteenth Amendment Equal Protection rights; and various other

claims under Georgia law   The lawsuit also stated that it was Plaintiffs' intentions

to press charges of race, gender and  discrimination and retaliation with the U.S.

Equal Employment Opportunity Commission.

94.

A true and accurate copy of the Complaint in Civil Action File No. 1·05-

CV—0083 was delivered to the Sheriff's office at 10:00 A M. on January 11, 2005.

95.

A true and accurate copy of Civil Action File No. 1:05-CV-0083 was delivered

to Deputy  Southerland at approximately 11:00 on January 11, 2005.

96.

Based on reports leaded to the media by Defendant V. Hill that he intended

to actually reinstate the Plaintiffs to their positions and allow them to physically

return to work, on January 11, 2005 (at 9·06 A.M.),   Plaintiffs made a written

requested  that Defendant Hill  provide notice as to  when and where they  were

expected   to return  to work, and to   further advise them of their ranks and

-36-

assignments, and the name of a contact person.

97

At 10:00 A.M. on January 11, 2005, Defendant Hill in fact held a press conference in which he indicated that he would (belatedly) come in to compliance with Judge Boswell's Order. Plaintiffs' counsel attempted to attend the press conference to learn Defendant Hill's intentions in this regard, but, on Hill's Orders, was prohibited from doing so by a Deputy Sheriff. Plaintiffs, therefore, were not made aware by Hill or anyone on his staff as to if, when, or where Plaintiffs were to return to work

98.

Plaintiffs' counsel remained outside Defendant Hill's office for more than two hours after Hill's January 11, 2005 press conference, but was never notified as to if, when or where the Plaintiffs were to return to work, despite the written request to Hill for this information delivered at 9.06 A.M.

99

It would have been an easy matter for Defendant Hill to have provided Plaintiffs' notice of when the Plaintiffs were expected to return to work, since Plaintiffs' Counsel waited outside Defendant Hill's office for more than two hours

after the press conference. In fact, even after Hill's press conference was concluded, Defendant Hill's lawyers (Rolf Jones and Evan Kaine) walked nearby by Plaintiffs' Counsel in the parking lot of the Sheriff's Office, but said not a word as to if, when, or where Plaintiffs were to return to work.

### 100

Rather than advising Plaintiffs' at this time or at any time before the close of business, January 11, 2005, as to if, when or where Plaintiffs were expected to report for duty, Defendant Hill and his lawyers were busy preparing subpoenas (in the Mandamus proceeding referenced in Pars. 85 and 86) to be delivered to the Plaintiffs at their homes by Deputies Southerland and Gardiner.

### 101.

The issuance of subpoenas to the Plaintiffs in the Mandamus Action, and the contemplated service of those subpoenas on the Plaintiffs by Deputies Southerland and Gardiner----the very snipers who brandished and/or pointed firearms at the Plaintiffs when they were illegally fired----was without substantial legal justification, and was done for the purpose of harassing, intimidating, and abusing the Plaintiffs. Fortunately, this intended harassment did not come to pass, because Plaintiffs' Counsel encountered Deputies Southerland and Gardiner in the parking lot, and

accepted service of said subpoenas. On the same day, Plaintiffs provided notice to Sheriff Hill and his lawyers that service of said subpoenas was legally meritless, and further advised them of the intention to initiate suit against them for abusive litigation if the subpoenas were not withdrawn. Despite this warning, the subpoenas were never withdrawn.

102.

On January 11, 2005, Plaintiff filed charges of unlawful race, age, and gender discrimination, and unlawful retaliation,    with the U.S. Equal Employment Opportunity Commission.

103.

As of 5·00 P.M on January 11 ,2005, despite having requested to be notified as to if, when and where Plaintiffs were to return, Defendants had failed and refused to provide any such information  Accordingly, at the close of business, January 11, 2005, Plaintiffs' advised Defendant Hill in writing that Plaintiffs were unable to report to report for duty the following day, i.e, January 12, 2005, and could not return to work absent notice as to when and where they were to report.

104

At approximately 5:30-6:00 P.M. on January 11, 2005, Deputy Southerland

began making phone calls to the Plaintiffs' homes, telling them that they were to report for duty the next day at 8.00 A.M., and threatening them, based on orders received from Defendants Hill and/or Cassells, that if they did not so report, they would be "AWOL", and subject to disciplinary action. Plaintiffs responded by telling Deputy Southerland that they were represented by Counsel concerning their employment with CCSO, and that all such communications and information were to be made through Counsel.

### 105.

At approximately 6.30 P.M. Deputy Southerland called Plaintiff's counsels's home, and indicated that the Plaintiffs were to return to work the next day. Plaintiffs' counsel notified Deputy Southerland at this time that he had already notified Defendant Hill that due to the lack of sufficient notice, Plaintiffs would not be able to report to duty the next day Plaintiff's Counsel further advised Deputy Southerland that any additional phone calls to the Plaintiffs' homes would be viewed unlawful telephone harassment.

### 106.

On the morning of January 12, 2005, Plaintiffs' Counsel again advised Sheriff Hill in writing of the need for reasonable notice to the Plaintiffs as to if, when and

where the Plaintiffs were to return to work, explicitly requesting to be provided such notice by 2:00 P M  No such notice was provided.

107

Instead of providing the requested notice, Defendant Hill falsely accused Plaintiffs in the media of being "AWOL", and threatened, via the Media, to take disciplinary actions against them

108.

The actions of the Defendants in failing and refusing to provide Plaintiffs of notice  as to if, when and where they were to return to work were taken for the purpose of punishing the Plaintiffs for their race and age, their political affiliation and protected political speech, and their protests against Defendants unlawful, discriminatory employment practices, were done for purpose of obstructing justice and intimidating, injuring and harassing parties and witnesses in federal and state proceedings, and were in furtherance of conspiracy alleged herein. Further, the action was taken the purpose of retaliating against the Plaintiffs for having formed a group to reveal and protest against Hill's illegal conduct, to petition their government, and to provide mutual aid and support

109.

At the time he accused Plaintiffs of being "AWOL", Hill knew that this assertion was false  In reality, Hill's false accusations that Plaintiffs were "AWOL" and his threats of taking disciplinary actions against the Plaintiffs were done in order to harass, intimidate and oppress the Plaintiffs based on their political affiliations and protected speech; their races and ages, and was intended to punish the Plaintiffs for their legally-protected protests against his unlawful, discriminatory employment practices. and was done for the purpose of obstructing justice and intimidating, harassing, and injuring parties and witnesses to cases pending in federal and state court  Further, these actions were accomplished in furtherance of the conspiracy referenced in Pars. 63-67.

110

On January 12, 2005, having received no notice from the Defendants as to if, when or where they were expected to return to work,  and having learned of Hill's false "AWOL" accusations and related threats of disciplinary action  in the media, the Plaintiffs determined that they would report to duty the next day, Thursday, January 13, 2005,  at their standard time and location

-42-

111.

Within the CCSO, there is a defined organizational structure and chain of command, which includes persons certified as "Peace Officers" by the Georgia Police Officer and Standards Training Council" ("POST"), and persons not so certified. Persons certified by POST as "Peace Officers", once employed by a law enforcement agency as such, possess the power of arrest, and are authorized to carry firearms. Persons not certified by POST as "Peace Officers" have no arrest powers, and are not authorized to carry firearms Likewise, individuals who are certified by POST as Peace Officers, but are not employed as such by a law enforcement agency lack the power of arrest are not authorized to carry weapons.

112.

CCSO employs certified Peace Officers in various ranks and positions for which POST certification is a necessary qualification. These positions are commonly referred to as "'Sworn" positions, and include, in descending order: Major, Captain, Lieutenant, Sergeant, and Deputy Sheriff. With the exception of Plaintiffs Eckler, Barnes, Richards and Glenn, prior to January 13, 2005, all of the Plaintiffs were employed in "sworn" positions requiring POST certification

-43-

113.

CCSO also employs persons who hold the position of "Correctional Officer." "Correctional Officers", however, are not required to be certified by as "Peace Officers" by the State, Clayton County, or the CCSO, do not possess the power of arrest, and are not authorized to carry firearms. The "Correctional Officer" position is an altogether different job function/category/classification than the "sworn" Major, Captain, Lieutenant, Sergeant, and Deputy Sheriff positions

114.

The primary function of the Correctional Officer position is to provide direct jail inmate supervision, to patrol inmate areas, to supervising inmate feeding, and to escort inmates throughout the jail as necessary. The "Correctional Officer" position is an entry level position which requires little (apart from a clean police record and a high school diploma) in the way of necessary qualifications.

115

Until Defendant V. Hill assumed office, all persons who held the position of Correctional Officer were subordinate in rank, stature and authority to even the lowest ranking Deputy Sheriff

-44-

116.

Upon reporting to duty, the Peace Officer Plaintiffs were told by Defendant Cassells that they were to be demoted from their sworn Peace Officer ranks to the rank of Deputy Sheriff

117

Rather than being demoted to the Deputy Sheriff rank, however, the sworn Peace Officer Plaintiffs were instead summarily demoted by the Defendants, as follows·

| Plaintiff/Rank | Demoted To |
|---|---|
| Major Bartlett | "Correctional Officer" |
| Major Maddox | "Correctional Officer" |
| Major Massengale | "Correctional Officer" |
| Captain Collins | "Correctional Officer" |
| Captain Daniel | "Correctional Officer" |
| Captain Glaze | "Correctional Officer" |
| Captain Haralson | "Correctional Officer" |
| Captain Smith | "Correctional Officer" |
| Lieutenant Cash | "Correctional Officer" |
| Lieutenant Daniel | "Correctional Officer" |
| Lieutenant Joiner | "Correctional Officer" |
| Lieutenant Nelson | "Correctional Officer" |
| Lieutenant Smith | "Correctional Officer" |
| Lieutenant Ward | "Correctional Officer" |
| Lieutenant Watkins | |

| | |
|---|---|
| Sergeant Crisp | "Correctional Officer" |
| Deputy Sheriff Fallins | "Correctional Officer" |
| Deputy Sheriff Glenn | "Correctional Officer" |
| Deputy Sheriff Jordan | "Correctional Officer" |
| Deputy Sheriff Lumpkin | "Correctional Officer" |
| Deputy Sheriff Mann | "Correctional Officer" |
| Deputy Sheriff Manning | "Correctional Officer" |
| Deputy Sheriff Watson | "Correctional Officer" |

These demotions were accomplished on the direct orders of Defendant Hill. Based on the demotions, Hill has refused to "swear in" these persons as Peace Officers/Deputy Sheriffs, a ceremony which is customary in the CCSO upon the election of a Sheriff

118.

At the time of their summary demotions, as employees of Clayton County, Ga., and/or the CCSO, pursuant to State and Local Law, all of the demoted Plaintiffs were classified members of and were protected by the Clayton County Civil Service Act. Pursuant to the Act, Plaintiffs could not be discharged, demoted, or suspended except for just cause. See, Ga. L. 1963, p 681; Ga. L. 1963, p.2747; Clayton County Resolution No. 65-9, Clayton County Resolution No. 65-10; Ga. L. 1968, p 2759; Ga 1986, p.5573; Ga. L. 1994, p.4339. Plaintiffs therefore possessed a property interest in the rank and position they held prior to the demotions discussed above.

-46-

119

As public employees possessed of a property interest in their continued employment, Plaintiffs were entitled to (1) ADVANCE notice of the charges against them; (2) an explanation of the employer's evidence, and (3) an opportunity to present their sides of the story. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 532.

120.

Defendants' unlawful demotions of the Plaintiffs has caused Plaintiffs to suffer direct pecuniary injury in the following particulars: (1) rendering them ineligible to participate in a State-sponsored retirement Plan, the Peace Officers Annuity and Benefit Fund, (2) depriving them of certain benefits of employment, including a County car; County cell phones, and County pagers; and (3) causing them to lose part-time positions which depended on their being sworn Peace Officers vested with arrest powers and authorization to carry weapons.

121.

In connection with Plaintiffs' demotions, Defendants, acting in concert pursuant to the plan agreed upon in prior conspiratorial deliberations deliberately and wilfully· (1) failed and refused  to provide advance notice of any reasons for

demotion; (2) failed and refused to provide any explanation of any evidence to support such reasons, and (3) failed and refused to provide Plaintiffs an opportunity to present their sides of the story.

122.

Defendants demoted the Plaintiffs identified in Par. 117 based on their political speech and affiliation, their race, their age, and in retaliation for Plaintiffs having complained of Defendants' unlawful, discriminatory hiring practices More specifically, the demotions were the product of Hill's racial animus, his desire for politically-inspired retaliation, his desire to punish the Plaintiffs for having exercised their First Amendment rights of free speech and association, including the formation of an advocacy group, and his desire to obstruct justice by way of intimidating, harassing, and injuring parties/witnesses to pending law suits (Civil Action File No. 1:05-CV-0083 and 2005-CV-16-8). The demotions were also the product of Hill's desire to intimidate, abuse and demean the Plaintiffs, and thereby force them to quit their jobs Said demotions, and accompanying refusal to provide notice, hearing, and opportunity to respond were undertaken in furtherance of the conspiracy referenced in Pars 63-67

123

Defendants' actions in demoting the Plaintiffs and denying them notice of if, when or where they were expected to return to work  was the product Defendants' conspiracy and agreement among the individual defendants to (a) deter the Plaintiffs, by intimidation and threat, from testifying freely, fully and truthfully in Civil Action File No. 1.05-CV-0083 and 2005-CV-16-8; (b) to injure the Plaintiffs for having initiated Civil Action File No  1·05-CV-0083, ( c) to injure the Plaintiffs and their property for their having lawfully sought to enforce their rights to equal protection under the law, and ( d) hinder, obstruct and defeat  the due course of justice in order to deny  Plaintiffs equal protection under the law.

124.

In addition to Defendants' unlawful demotion of the Plaintiffs referenced above, in furtherance of the  conspiracy referenced in Pars. 63-67 and 122-23, Defendants committed a host of other retaliatory acts intended to punish and injure the Plaintiffs because of their complaints of unlawful race and gender discrimination (including being parties in Civil Action File No. 1:05-CV-0083), and based on their political speech and affiliations, their race, their gender.   These actions included:

(A)    deliberately placing Plaintiffs in harm's way and in risk of violent

physical injury by way of:

1    requiring Plaintiffs to perform inmate supervision ("Correctional
     Officer") functions without necessary training or experience in
     performing that function;

2    requiring Plaintiffs to perform inmate supervision ("Correctional
     Officer") functions without required equipment, including a duty
     belt equipped with properly functioning radios and canisters of
     pepper spray;

3    marking and identifying the Plaintiffs to the jail inmate
     population as the "fired" deputies by forcing Plaintiffs to wear
     partial Deputy Sheriff uniforms (i.,e., their regular Deputy Sheriff
     uniforms minus their badges)  while performing "Correctional
     Officer Duties", at a time when *real* Correctional Officers wore
     entirely different uniforms,

4    making it necessary for Plaintiffs to wear partial Deputy Sheriff
     uniforms in public, but without a badge, arrest powers, or a
     weapon, thereby exposing them to the risk of attack by a former
     arrestee or inmate with no means of self-defense,

5    Ordering and directing Plaintiffs' co-workers not to "watch their backs" when performing inmate supervision functions;

(B)    deliberately creating and imposing on the plaintiff an egregiously hostile work environment by way of threats, repeated last-minute repeated shift changes and changed off-days; repeated, abrupt changes in work assignments; undue criticisms and demands, and demeaning and humiliating work assignments;

( C)    Fabricating and disseminating false allegations of corruption and other misconduct against the Plaintiffs, including allegations that they received "kickbacks" from vendors and providers of jail supplies and equipment;

(D)    initiating bogus and contrived "Internal Investigations" concerning the part-time employment of certain Plaintiffs, including Correctional Officer (nee Captain) Samuel Smith, with no cause or justification for such investigation,

125.

All of the actions described in Par. 124 were committed in furtherance of the conspiracy alleged above, and were accomplished via the personal participation of

the individual defendants and/or at their order and direction and/or with their knowledge, approval, ratification, condonation, and acquiescence. Said actions were also taken for the purpose of: (a) deter the Plaintiffs, by intimidation and threat, from testifying freely, fully and truthfully in Civil Action File No. 1:05-CV-0083 and 2005-CV-16-8; (b) to injure the Plaintiffs for having initiated Civil Action File No. 1:05-CV-0083, ( c) to injure the Plaintiffs and their property for their having lawfully sought to enforce their rights to equal protection under the law; and ( d) hinder, obstruct and defeat  the due course of justice in order to deny  Plaintiffs equal protection under the law.

### 126.

As a consequence of Defendants' unlawful actions, Plaintiffs have suffered lost wages, and  benefits of employment, including diminished retirement benefits

### 127.

As a consequence of Defendants' unlawful actions, Plaintiffs have suffered physical injury and severe mental and emotional distress, including but not limited to humiliation, embarrassment, sadness, depression, anxiety, lost sleep and appetite.

### 128.

As a consequence of Defendants' unlawful actions, including but not limited

to bogus and defamatory allegations of corruption and other misconduct, Plaintiffs have suffered damaged reputations and diminished standing in the community.

### 129.

As a consequence of Defendants' unlawful conduct, Plaintiffs have lost other part-time, security-related jobs due to their not being permitted to carry firearms, due to their loss of arrest powers, and due to their inability or wear their uniforms they would be permitted to carry and wear had Plaintiffs not been fired and later demoted

### 130

No competent public official in the position of the Defendants could have reasonably believed at the time these events were occurring that the actions complained of herein were lawful.

### 131.

Defendants, based on clearly established law, knew at the time they committed the acts described herein that such acts were unlawful, and were in direct violation of Plaintiffs' First Amendment rights of free speech and association, their Fourteenth Amendment rights to be free of unlawful race discrimination and right to Due Process of Law, and their Fourth Amendment rights to be free from unlawful

search and seizure.

132.

All the actions complained of herein were committed under color of state and local law

133

All of the actions complained of herein were taken pursuant to the policy and custom of Clayton County, Georgia, and/or were committed/approved by individuals possessed of such authority so as to properly attribute such actions to Clayton County, Georgia.

134.

All of the actions complained of herein were committed with the personal participation of the individual defendants, or at their direction, or with their knowledge, approval, ratification and/or acquiescence.

135

The conduct on the part of the individual defendants alleged herein was willful, deliberate, purposeful, malicious and motivated by spite, bad faith and unlawful discriminatory and retaliatory animus.

136.

The CCSO has adopted and operates pursuant to certain written rules and regulations

137

CCSO Rule No. 7.47 ("Media Releases") provides in pertinent part as follows:

> Only authorized personnel of this Sheriff's Office shall release or give out any information or official reports to news media or any other persons, concerning any matter this Sheriff's Office is involved. Press releases and interviews will be conducted by a designated Public Information Officer named by the Sheriff or Chief Deputy

138.

CCSO Rule No. 7.48(A) ("Public Criticism") provides in pertinent part as follows·

> Public criticism of departmental operations or personnel can undermine the public confidence in law enforcement and adversely affect morale and good order. Accordingly, employees are required to express either orally or in writing any work-related criticism to their immediate supervisor, through the "chain of command....

139.

CCSO Rule No 7.48(B)("Public Criticism) provides in pertinent part as follows·

-55-

> Personnel of the Sheriff's Office are strictly forbidden from criticizing the official acts of their superior officers.

### 140.

CCSO Rule No. 7.48(C)("Public Criticism") provides in pertinent part as follows.

> No Deputy or superior officer of the Sheriff's Office, who has been changed from one Watch to another by his Superior officer shall complain of such change to any person other than his immediate Superior Officer for the purpose of getting changed back to the Watch fro which he/she has been changed or removed, nor shall he/she induce or encourage citizens to intercede by petition or otherwise with his/her Superior officers in an effort to secure such change. Any Deputy or Superior Officer who violates these rules will be deemed guilty of insubordination.

### 141.

CCSO Rules 7.47 and 7.48 bar, in advance, speech, petition and association activities protected by the First Amendment to the United States Constitution and therefore constitute an unlawful prior restraint.

### 142

Defendants, acting in concert and in furtherance of the conspiracy alleged herein, have explicitly threatened to discipline some of the Plaintiffs, including Correctional Officer (nee Major) Mike Maddox, for allegedly violating Rules 7.47

and/or 7.48.

143.

Defendant threats of disciplinary action are for the purpose of retaliating against the Plaintiffs for their exercise of rights protected by the First, Fourth, and Fourteenth Amendments, and for the additional purpose of obstructing justice and harassing, intimidating and injuring parties and/or witnesses in Civil Action File No. 1·05-CV-0083 and 2005-CV-16-8.

## SUBSTANTIVE ALLEGATIONS[2]

## COUNT ONE: 42 U.S.C. §1983 VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS OF FREE SPEECH AND ASSOCIATION

144

Defendants' actions in firing and otherwise mistreating the Plaintiffs as alleged herein-----motivated by the desire to punish Plaintiffs for: (a) expressing their political support for Defendant Hill's political opponents and rival candidates, and/or (b) failing or refusing to support Hill's candidacy for office-----constitute violations of Plaintiffs' First Amendment rights to freedom of speech, association, and political

---

[2]Plaintiffs have initiated charges of discrimination and retaliation with the United States Equal Opportunity Commission asserting violations of Title VII of the Civil Rights Act of 1964, 42 U S C  Section 2000(e) and the Age Discrimination In Employment Act, 29 U S C  Section 621 et seq  Plaintiffs assert no claims under said statutes, but will move to supplement this Complaint to add such claims upon receipt of Notices of Right to Sue from the EEOC

affiliation, and is actionable via 42 U.S.C. §1983.

## COUNT TWO: 42 U.S.C. §1983 VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHT OF INTIMATE/FAMILIAL ASSOCIATION

145

Defendants' actions in firing and otherwise mistreating Plaintiffs A. Daniel; L. Daniel, Lumpkin, and Eckler----based on their protected intimate and/or familial associations as enumerated herein----constitute violations of their First Amendment right to freedom of association, and is actionable via 42 U.S.C §1983.

## COUNT THREE: 42 U.S.C. §1983 VIOLATIONS OF PLAINTIFFS' RIGHT OF FREE ASSOCIATION FOR PURPOSES OF ADVOCACY AND TO PROVIDE MUTUAL AID, SUPPORT AND COMFORT.

146.

Some or all of the Defendants abusive treatment of the Plaintiffs subsequent to January 3, 2005, as set forth in Pars. 86-124,   including Plaintiffs' summary demotions on January 13, 2005,  was motivated by Defendants' desire to punish Plaintiffs for forming a group and engaging in concerted and collective action for the purpose of revealing Defendants' misconduct in office; to protest against said unlawful conduct; to Petition their government; and to provide mutual aid support. Such retaliatory actions on the part of the Defendants constitute a violation of Plaintiffs' First Amendment right of free association

## COUNT FOUR: 42 U.S.C. §1983 VIOLATION OF PLAINTIFFS' RIGHTS TO BE FREE FROM UNLAWFUL RACE DISCRIMINATION
147.

Defendants' race-based terminations of Plaintiffs' employment and the other race-based misconduct directed at the Plaintiffs enumerated herein, including but not limited to Plaintiffs' summary demotions,   constitute  violations of Plaintiffs' Fourteenth Amendment right  to be free from unlawful race discrimination, and is actionable via 42 U S.C  §1983

### COUNT FIVE : 42 U.S.C. §1981 RACE DISCRIMINATION

148.

The actions of the individual defendants in discriminating against the Plaintiffs----firing them and otherwise mistreating  them for racial reasons as alleged above-----constitute  violations of 42 U.S.C. §1981 for which the individual defendants are liable to the Plaintiffs for special, general and punitive damages.

### COUNT SIX: 42 U.S.C. §1981 RETALIATION

149.

The actions of the individual defendants in retaliating against the Plaintiffs for complaining of unlawful race discrimination as alleged herein constitute violations of 42 U.S.C  §1981 for which the individual defendants are liable to the Plaintiffs for

special, general, and punitive damages.

## COUNT SEVEN: 42 U.S.C. §1983 GENDER DISCRIMINATION

150.

Defendants' gender-based terminations of Plaintiffs S. Glenn; Lumpkin, Cash; Nelson; L Daniel; Richards and Eckler and other misconduct directed at them as detailed herein, constitutes of violations of their rights under the Equal Protection Clause of the Fourteenth Amendment and actionable via 42 U.S.C. §1983.

## COUNT EIGHT: 42 U.S.C. §1983 VIOLATION OF PLAINTIFFS' RIGHT TO PROCEDURAL DUE PROCESS: PROPERTY INTEREST

151

Pursuant to governing state and local law,  Plaintiffs could lawfully be discharged or demoted  only for cause, and therefore possessed property interests in their continued public employed.

152.

Defendants' summary termination of plaintiffs employment (deprivation of their property interest in employment), and Defendants' summary demotions of the Plaintiffs without advance notice as to the reasons, without an explanation as to the evidence supporting such reasons, and without any opportunity to be heard constitutes a violation of Plaintiffs' Fourteenth Amendment rights to procedural due

process, and is actionable under 42 U.S.C. §1983.

## COUNT NINE : 42 U.S.C. §1983 VIOLATION OF PLAINTIFFS' RIGHT TO PROCEDURAL DUE PROCESS: LIBERTY INTEREST

153.

Defendants' termination of Plaintiffs' employment and subsequent demotions of the Plaintiffs—done contemporaneously with Defendants' false, scurrilous and defamatory allegations of corruption and dishonest-----deprived Plaintiffs of their reputation and their liberty without due process of law. Such deprivation is actionable under 42 U.S C. §1983

## COUNT TEN: VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHT TO BE FREE FROM UNLAWFUL SEARCH AND SEIZURE

154.

Defendants' seizure of Plaintiffs' personal property at the time of Plaintiffs' terminations (and prolonged retention of said property thereafter), and Defendants' contemporaneous seizure of Plaintiffs' persons and accompanying involuntary restriction of their freedom of movement constituted a violation of Plaintiffs' Fourth Amendment rights to be free from unreasonable search and seizure.

-61-

## COUNT ELEVEN: 42 U.S.C. §1983 CONSPIRACY TO VIOLATE PLAINTIFFS' FIRST, FOURTH AND FOURTEENTH AMENDMENT RIGHTS.

155.

Both before and after January 3, 2005, Defendants reached an agreement and plan to violate Plaintiffs' First Amendment rights of Free Speech and Association, Plaintiffs' Fourteenth Amendment rights to Due Process of Law and Equal Protection under the law, and Plaintiffs' Fourth Amendment Rights to be from unlawful search and seizure, thereby participating in a Conspiracy, which conspiracy was actually put into action and consummated via Plaintiffs' unlawful terminations and other mistreatment set forth herein Said conspiracy is actionable under 42 U.S.C. §1983.

## COUNT TWELVE: 42 U.S.C. §1985(3) CONSPIRACY TO VIOLATE PLAINTIFFS' FOURTEENTH AMENDMENT RIGHTS TO BE FREE FROM UNLAWFUL RACIAL DISCRIMINATION.

156.

Both before and after January 3, 2005, Defendants reached an agreement and plan to violate Plaintiffs' constitutional right to be free from unlawful racial discrimination, thereby participating in a Conspiracy, which conspiracy was put into action and consummated via Plaintiffs' unlawful terminations, demotions, and other mistreatment as set forth herein. Said conspiracy included and includes both persons employed in the CCSO and/or Clayton County, Ga., and persons not employed in

-62-

the CCSO or Clayton County, Ga.  Said conspiracy is actionable under 42 U.S.C.

§1985(3).

## COUNT THIRTEEN: 42 U.S.C. §1985(2) CONSPIRACY TO OBSTRUCT D TO INTIMIDATE PARTIES AND WITNESSES.

157

Defendants' actions in demoting and otherwise mistreating the Plaintiffs as

alleged herein for the purpose of harassing and intimidating parties and witnesses to

Civil Action File No. 1·05-CV-0083 and 2005-CV-16-8 constitutes a violation of 42

U S C. §1985(2)

## COUNT FOURTEEN:  42 U.S.C. §1983 UNLAWFUL PRIOR RESTRAINT ON SPEECH IN VIOLATION OF THE FIRST AMENDMENT

158

CCSO Rule Nos  7 47 and 7.48 constitute unlawful prior restraints on protected

speech in direct violation of the First Amendment and are actionable under 42 U S C.

§1983

## COUNT FIFTEEN: INTENTIONAL INFLICTION OF OF EMOTIONAL DISTRESS

159

The conduct of the individual defendants' conduct was extreme and

outrageous, and was intended to and did cause Plaintiffs to suffer severe emotional

-63-

distress  Further, such conduct was the product of malice, oppression, spite and ill will  The individual defendants have therefore committed the tort of Intentional Infliction of Emotional Distress under Georgia law

## COUNT SIXTEEN: DEFAMATION (LIBEL/SLANDER)

160.

Subsequent to Plaintiffs' terminations, the individual  Defendants have made false and defamatory statements and accusations of misconduct against the Plaintiffs, including false allegations of corruption and dishonesty, both verbally and in writing  Said false allegations have caused irreparable injury to Plaintiffs' reputations and standing in the community  Defendants have therefore committed the torts of libel and slander under Georgia law

## COUNT SEVENTEEN:  FALSE IMPRISONMENT

161.

In carrying out their plot to unlawfully terminate the Plaintiffs,  the individual Defendants, without probable cause or justification, and  in a deliberately menacing fashion,  forced and compelled Plaintiffs to restrict their movements and freedom of movement, thereby committing the tort of false imprisonment under Georgia law.

-64-

## COUNT EIGHTEEN: ASSAULT

162

By causing Plaintiffs, without cause or justification, to be surrounded by menacing armed guards, by restricting Plaintiffs' movement, and by posting Snipers on the roof of the jail with orders to use deadly force, Defendants put Plaintiffs in reasonable fear of their safety and well-being, and thereby committed the tort of assault

163.

By committing the acts described in Pars . 124(a) and 124(b), Defendants deliberately put Plaintiffs in reasonable fear of their safety and well being, thereby again committed the tort of assault.

## COUNT NINETEEN: CONVERSION

164.

Defendants, acting without probable cause or justification, confiscated Plaintiffs' personal property, and despite repeated demands, refused to return same Defendants have therefore committed the tort of conversion under Georgia law

## COUNT TWENTY: VIOLATION OF RIGHTS CONFERRED UNDER THE GEORGIA CONSTITUTION

165.

The actions of the Defendants alleged above constitute violations of the Georgia Constitution, including violation of Plaintiffs' Due Process rights to notice and hearing, Equal Protection rights t o b e f ree from unlawful race and gender discrimination, freedom to be free from unreasonable search and seizure, and First Amendment rights of Free Speech, Petition, and Association.

## COUNT TWENTY ONE: DECLARATORY JUDGMENT

166.

Although the law is clearly established that the Plaintiffs possess a property interest in their continued public employment (by way of their being protected by the Clayton County Civil Service System, according to which they may be terminated from employment or demoted only "for cause" with notice and opportunity to be heard), Defendant Hill publicly and adamantly contends otherwise. Therefore, there exists an actual controversy between the parties regarding the existence of the Plaintiffs' property right in continued public employment and their concomitant entitlement to due process of law. The parties are therefore in need of a judicial pronouncement on the issue in order to guide their future conduct.

167.

The law is clearly established that CCSO Rules 7 47 and 7.48 constitute unlawful prior restrains on protected speech. Defendant Hill, however, has explicitly threatened to apply such rules to the Plaintiffs. There therefore exists a controversy between the parties, and the parties are in need of a judicial pronouncement on the issue in order to guide their future conduct

## COUNT TWENTY-TWO: O.C.G.A §13-6-11

168

Defendants' conduct as set forth herein was done in bad faith, thereby authorizing an award of attorney's fees and costs of litigation to the Plaintiffs

**WHEREFORE,** Plaintiffs demand judgment as follows:

(a)     that the Defendants be served with a copy of this Complaint and process as provided by law,

(b)     that the Plaintiffs  recover of the Defendants special and general damages as proven at trial;

(c)     that Plaintiffs recover prejudgment interest,

(d)     that the Plaintiffs recover punitive damages against the individual defendants;

(e)     that the Plaintiffs recover their  costs and reasonable attorney's fees
        pursuant to 42 U.S.C. §1988 and State law, including O.C.G.A. Section
        13-6-11;

(f)     that the Court issue a Temporary Restraining Order compelling
        Defendant Hill to immediately swear in the Plaintiffs as Peace Officers;
        to immediately  reinstate Plaintiffs to the positions of employment as
        sworn Peace Officers  in the ranks they held prior to Defendant Hill's
        illegal firings and demotions,  with all prior benefits of employment,
        including County cars, County Cell phones, and the like; and l to assign
        Plaintiffs to duties and responsibilities commensurate with such
        positions,  as set forth in the applicable job descriptions and
        classifications.

(g)     that the Court enter a Declaratory Judgment to the effect that Plaintiffs
        are entitled to the protections of the Clayton County Civil Services, that
        they may not lawfully be terminated absent just cause, that they
        therefore   possess a property interest in their continued public
        employment, and that  are entitled notice and hearing,

(h)     that the Court enter a Declaratory Judgment to the effect that CCSO

Rules 7 47 and 7.47 constitute unlawful prior restraints on speech which violate the First Amendment are null and void;

(I)    that the Court enter an Order requiring Defendants to provide Plaintiffs with due process of law in connection with any attempted termination of their employment, demotion, or suspension, including specific notice as to the reasons for the terminations, and an opportunity to respond;

(j)    that Defendants be temporarily, preliminarily, and permanently enjoined from committing further unlawful acts of retaliation and discrimination or denials of due process in the form of summary terminations of employment or other disciplinary actions;

(k)    that the Plaintiff have such further relief as the Court may deem just and proper;

(h)    trial by jury

Respectfully submitted this 21st day of January, 2005.


_____
Harlan S. Miller
Georgia Bar No. 506709


MILLER, BILLIPS & ATES, P.C
730 Peachtree Street
Suite 750
Atlanta, Georgia 30308
(404) 969-4101
(404) 969-4141 (fax)