obviously placed there on the orders of the individual  Defendants.  To this day, Defendants have failed and refused to return numerous other items of Plaintiffs' property.

120.

Plaintiffs repeatedly demanded of Defendant Hill that he comply with Judge Boswell's Order to reinstate them  and maintain the status quo, that is,   actually reinstating them to the positions they held prior to January 3, 2005, but such demands were utterly ignored for unlawful racial, gender, age, retaliatory and political reasons.

121.

Notwithstanding Plaintiffs' repeated demands that they actually be reinstated to their positions, from January 4, 2005 until January 11, 2005, Defendants failed and refused to take  any action whatever to come in to compliance with Judge Boswell's Order to reinstate the Plaintiffs and to maintain the status quo, for the same unlawful racial, gender, age and political reasons noted above.

122.

Prior to January 10, 2005, Plaintiffs  repeatedly advised Defendant Hill that they would initiate suit  in this Court  in order to address his misconduct, including unlawful race and gender discrimination,  and further advised him of their intention

-46-

file charges of race, gender and age  discrimination and retaliation with the U.S. Equal Employment Opportunity Commission.

123.

On January 10, 2005, Plaintiffs filed an action in this Court,  Massengale et al v. Hill et al, Civil Action File No. 1:05-CV-0083, asserting claims against Defendants V. Hill, Cassells, Lindsey, Marierose, Harris, Hanner, S. Hill, and Antoine, claims for violations of Plaintiffs' First Amendment rights of free speech and association (via 42 U.S.C. §1983); violations of Plaintiffs Fourteenth Amendment rights to Equal Protection (ie, unlawful race and gender discrimination) (via 42 U.S.C. §1983); violations of Plaintiffs Fourteenth Amendment right to  Due Process (ie, deprivation of liberty and property without due process)(via 42 U.S.C. §1983); violations of Plaintiffs rights to be free from racial discrimination in employment (via 42 U.S.C. §1981); violations of Plaintiffs rights to be free from unlawful retaliation  (via 42 U.S.C. §1981); violations of Plaintiffs Fourth Amendment right to be free from unlawful search and seizure (via 42 U.S.C. §1983);  conspiracy to violate Plaintiffs' First, Fourth and Fourteenth Amendment rights (via 42 U.S.C. 1983); conspiracy to violate Plaintiffs Fourteenth Amendment Equal Protection rights; and various other claims under Georgia law.  The lawsuit also stated that it was Plaintiffs' intentions to press charges of race, gender and  discrimination and retaliation with the U.S.

-47-

Equal Employment Opportunity Commission.

124.

A true and accurate copy of the Complaint in Civil Action File No. 1:05-CV—0083 was delivered to the Sheriff's office at 10:00 A.M. on January 11, 2005.

125.

A true and accurate copy of Civil Action File No. 1:05-CV-0083 was delivered to Lieutenant S. Southerland at approximately 11:00 on January 11, 2005.

126.

Based on reports leaked to the media by Defendant V. Hill that he intended to actually reinstate the Plaintiffs to their positions and allow them to physically return to work, on January 11, 2005 (at 9:06 A.M.), Plaintiffs made a written request that Defendant Hill provide notice as to when and where they were expected to return to work, and to further advise them of their ranks and assignments, and the name of a contact person.

127

At 10:00 A.M. on January 11, 2005, Defendant Hill in fact held a press conference in which he indicated that he would (belatedly) come in to compliance with Judge Boswell's Order. Plaintiffs' counsel attempted to attend the press

-48-

conference to learn Defendant Hill's intentions in this regard, but, on Hill's Orders, was prohibited from doing so by Deputy Sheriff Paco Pieras, known political supporter of Defendant Hill. Plaintiffs, therefore, were not made aware by Hill or anyone on his staff as to if, when, or where Plaintiffs were to return to work.

128.

Plaintiffs' counsel remained outside Defendant Hill's office for more than two hours after Hill's January 11, 2005 press conference, but was never notified as to if, when or where the Plaintiffs were to return to work, despite the written request to Hill for this information delivered at 9:06 A.M.

129.

It would have been an easy matter for Defendant Hill to have provided Plaintiffs' notice of when the Plaintiffs were expected to return to work, since Plaintiffs' Counsel waited outside Defendant Hill's office for more than two hours after the press conference. In fact, even after Hill's press conference was concluded, Defendant Hill's lawyers (Rolf Jones and Evan Kaine) walked nearby by Plaintiffs' Counsel in the parking lot of the Sheriff's Office, but said not a word as to if, when, or where Plaintiffs were to return to work.

130.

Rather than advising Plaintiffs' at this time or at any time before the close of business, January 11, 2005, as to if, when or where Plaintiffs were expected to report for duty, Defendant Hill and his lawyers were busy preparing subpoenas (in the Mandamus proceeding)  to be delivered to the Plaintiffs at their homes by Deputies Southerland and Gardiner.

131.

The issuance of subpoenas to the Plaintiffs in the Mandamus Action, and the contemplated service of those subpoenas on the Plaintiffs by Deputies Southerland and Gardiner----the very  snipers who brandished and/or pointed firearms at the Plaintiffs when they were illegally fired----was without substantial legal justification, and was done for the purpose of harassing, intimidating, and abusing the Plaintiffs. Fortunately, this intended harassment did not come to pass, because Plaintiffs' Counsel encountered Deputies Southerland and Gardiner in the parking lot, and accepted service of said subpoenas. On the same day, Plaintiffs provided notice to Sheriff Hill and his lawyers that service of said subpoenas was legally meritless, and further advised them of the intention to initiate suit against them for abusive litigation if the subpoenas were not withdrawn.  Despite this warning, the subpoenas were never withdrawn.

132.

On January 11, 2005, the Plaintiffs identified in Par. 3 above filed charges of unlawful race, age, and gender discrimination, and unlawful retaliation, with the U.S. Equal Employment Opportunity Commission.

133.

As of 5:00 P.M. on January 11 ,2005, despite having requested to be notified as to if, when and where Plaintiffs were to return, Defendants had failed and refused to provide any such information. Accordingly, at the close of business, January 11, 2005, Plaintiffs' advised Defendant Hill in writing that Plaintiffs were unable to report to report for duty the following day, i.e, January 12, 2005, and could not return to work absent notice as to when and where they were to report.

134.

At approximately 5:30-6:00 P.M. on January 11, 2005, Deputy Southerland began making phone calls to the Plaintiffs' homes, telling them that they were to report for duty the next day at 8:00 A.M., and threatening them, based on orders received from Defendants Hill and/or Cassells, that if they did not so report, they would be "AWOL", and subject to disciplinary action. Plaintiffs responded by telling Deputy Southerland that they were represented by Counsel concerning their

-51-

employment with CCSO,  and that all such communications and information were to be made through Counsel.

135.

At approximately 6:30 P.M. Deputy Southerland called Plaintiff's counsels's home, and indicated that the Plaintiffs were to return to work the next day. Plaintiffs' counsel notified Deputy  Southerland at this time that he had already notified Defendant Hill that due to the lack of sufficient notice, Plaintiffs would not be able to report to duty the next day. Plaintiff's Counsel further advised Deputy Southerland that any additional phone calls to the Plaintiffs' homes would be viewed unlawful telephone harassment.

136.

On the morning of January 12, 2005, Plaintiffs' Counsel again advised Sheriff Hill in writing of the need for reasonable notice to the Plaintiffs as to if, when and where the Plaintiffs were to return to work, explicitly requesting to be provided such notice by 2:00 P.M. No such notice was provided.

137.

Instead of providing the requested notice, Defendant Hill falsely accused Plaintiffs in the media of being "AWOL", and threatened, via the Media, to take

disciplinary actions against them.

138.

The actions of the Defendants in failing and refusing to provide Plaintiffs of notice  as to if, when and where they were to return to work were taken for the purpose o f p unishing t he P laintiffs b ased o n  t heir race, a ge a nd g ender,  t heir political affiliation and protected political speech, and their protests against Defendants unlawful, discriminatory employment practices, and was  done for purpose of obstructing justice and intimidating, injuring and harassing parties and witnesses in federal and state proceedings,  and were in furtherance of conspiracy alleged herein. Further, the action was taken the purpose of retaliating against the Plaintiffs for having formed a group to reveal and protest against Hill's illegal conduct, to petition their government, and to provide mutual aid and support.

139.

At the time he accused Plaintiffs of being "AWOL", Hill knew that this assertion was false.  In reality, Hill's false accusations that Plaintiffs were "AWOL" and his threats of taking disciplinary actions against the Plaintiffs were done in order to harass, intimidate and oppress the Plaintiffs based on their political affiliations and protected speech; their race, age, and gender,  and was intended to punish the

Plaintiffs for their legally-protected protests against his unlawful, discriminatory employment practices, and was done for the purpose of obstructing justice and intimidating, harassing, and injuring parties and witnesses to cases pending in federal and state court. Further, these actions were accomplished in furtherance of the conspiracy referenced herein.

### 140.

On January 12, 2005, having received no notice from the Defendants as to if, when or where they were expected to return to work,   and having learned of Hill's false "AWOL" accusations and related threats of disciplinary action  in the media, the Plaintiffs determined that they would report to duty the next day, Thursday, January 13, 2005,  at their standard time and location.

### 141.

Within the CCSO, there is a defined organizational structure and chain of command, which includes persons certified as "Peace Officers" by the Georgia Police Officer and Standards Training Council" ("POST"), and persons not so certified. Persons certified by POST as "Peace Officers", once employed by a law enforcement agency as such,  possess the power of arrest, and are authorized to carry firearms. Persons not certified by POST as "Peace Officers" have no arrest powers, and are not

authorized to carry firearms. Likewise, individuals who are certified by POST as Peace Officers, but are not employed as such by a law enforcement agency lack the power of arrest are not authorized to carry weapons.

142.

CCSO employs certified Peace Officers in various ranks and positions for which POST certification is a necessary qualification. These positions are commonly referred to as "'Sworn" positions, and include, in descending order: Major, Captain, Lieutenant, Sergeant, and Deputy Sheriff. With the exception of Plaintiffs Eckler, Barnes, Richards and Glenn, prior to January 13, 2005, all of the Plaintiffs were employed in "sworn" positions requiring POST certification.

143.

CCSO also employs persons who hold the position of "Correctional Officer." "Correctional Officers", however, are not required to be certified by as "Peace Officers" by the State, Clayton County, or the CCSO, do not possess the power of arrest, and are not authorized to carry firearms. The "Correctional Officer" position is an altogether different job function/category/classification than the "sworn" Major, Captain, Lieutenant, Sergeant, and Deputy Sheriff positions.

144.

The primary function of the Correctional Officer position is to provide direct jail inmate supervision,  to patrol  inmate areas, to supervising inmate feeding, and to  escort inmates throughout the jail  as necessary.  The "Correctional Officer" position is an entry level position which requires little (apart from a clean police record and a high school diploma) in the way of necessary qualifications.

145.

Until Defendant V. Hill assumed office, all persons who held the position of Correctional Officer were subordinate in rank, stature and authority to even the lowest ranking Deputy Sheriff.

146.

Upon reporting to duty on January 13, 2005, the Peace Officer Plaintiffs were told by Defendant Cassells that they were to be demoted from their sworn Peace Officer ranks to the rank of Deputy Sheriff.

147.

Rather than being demoted to the Deputy Sheriff rank, however, the sworn Peace Officer Plaintiffs were instead  summarily demoted by the Defendants, as

follows:

| Plaintiff/Rank | Demoted To |
| --- | --- |
| Major Bartlett | "Correctional Officer" |
| Major Maddox | "Correctional Officer" |
| Major Massengale | "Correctional Officer" |
| Captain Collins | "Correctional Officer" |
| Captain Daniel | "Correctional Officer" |
| Captain Glaze | "Correctional Officer" |
| Captain Haralson | "Correctional Officer" |
| Captain Smith | "Correctional Officer" |
| Lieutenant Cash | "Correctional Officer" |
| Lieutenant Daniel | "Correctional Officer" |
| Lieutenant Joiner | "Correctional Officer" |
| Lieutenant Nelson | "Correctional Officer" |
| Lieutenant Smith | "Correctional Officer" |
| Lieutenant Ward | "Correctional Officer" |
| Lieutenant Watkins | "Correctional Officer" |
| Sergeant Crisp | "Correctional Officer" |
| Deputy Sheriff Fallins | "Correctional Officer" |
| Deputy Sheriff Glenn | "Correctional Officer" |
| Deputy Sheriff Jordan | "Correctional Officer" |
| Deputy Sheriff Lumpkin | "Correctional Officer" |
| Deputy Sheriff Mann | "Correctional Officer" |
| Deputy Sheriff Manning | "Correctional Officer" |
| Deputy Sheriff Watson | "Correctional Officer" |

These demotions were accomplished on the direct orders of Defendant Hill. Based

on the demotions, Hill has refused to "swear in" these persons as Peace

Officers/Deputy Sheriffs, a ceremony which is customary in the CCSO upon the election of a Sheriff.

148.

At the time of their summary demotions, as employees of Clayton County, Ga., and/or the CCSO, pursuant to State and Local Law, all of the demoted Plaintiffs were classified members of and were protected by the Clayton County Civil Service Act. Pursuant to the Act, Plaintiffs could not be discharged, demoted, or suspended except for just cause. See, Ga. L. 1963, p.681; Ga. L. 1963, p.2747; Clayton County Resolution No. 65-9; Clayton County Resolution No. 65-10; Ga. L. 1968, p.2759; Ga. 1986, p.5573; Ga. L. 1994, p.4339. Plaintiffs therefore possessed a property interest in the rank and position they held prior to the demotions discussed above.

149.

As public employees possessed of a property interest in their continued employment, Plaintiffs were entitled to (1) ADVANCE notice of the charges against them; (2) an explanation of the employer's evidence; and (3) an opportunity to present their sides of the story. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 532.

150.

Defendants' unlawful demotions of the Plaintiffs has caused Plaintiffs to suffer direct pecuniary injury in the following particulars: (1) rendering them ineligible to participate in a State-sponsored retirement Plan, the Peace Officers Annuity and Benefit Fund; (2) depriving them of certain benefits of employment, including a County car; County cell phones, and County pagers; and (3) causing them to lose part-time positions which depended on their being sworn Peace Officers vested with arrest powers and authorization to carry weapons.

151.

In connection with Plaintiffs' demotions, Defendants, acting in concert pursuant to the plan agreed upon in prior conspiratorial deliberations deliberately and wilfully:   (1) failed and refused   to provide advance notice of any reasons for demotion; (2) failed and refused to provide  any explanation of any evidence to support such reasons; and (3) failed and refused to provide Plaintiffs an opportunity to present their sides of the story.

152.

Defendants demoted the Plaintiffs identified in Par. 147  based on their political speech and affiliation,  their race, their age and gender, and in retaliation

-59-

for Plaintiffs having complained of Defendants' unlawful, discriminatory employment practices. More specifically, the demotions were the product of Hill's racial animus, his desire for politically-inspired retaliation, his desire to punish the Plaintiffs for having exercised their First Amendment rights of free speech and association, including the formation of an advocacy group, and his desire to obstruct justice by way of intimidating, harassing, and injuring parties/witnesses to pending law suits (Civil Action File No. 1:05-CV-0083 and 2005-CV-16-8). The demotions were also the product of Hill's desire to intimidate, abuse and demean the Plaintiffs, and thereby force them to quit their jobs. Said demotions, and accompanying refusal to provide notice, hearing, and opportunity to respond were undertaken in furtherance of the conspiracy referenced in Pars. 94-96.

### 153.

Defendants' actions in demoting the Plaintiffs and denying them notice of if, when or where they were expected to return to work was the product Defendants' conspiracy and agreement among the individual defendants to (a) deter the Plaintiffs, by intimidation and threat, from testifying freely, fully and truthfully in Civil Action File No. 1:05-CV-0083 and 2005-CV-16-8; (b) to injure the Plaintiffs for having initiated Civil Action File No. 1:05-CV-0083, ( c) to injure the Plaintiffs and their property for their having lawfully sought to enforce their rights to equal protection

under the law; and ( d)  hinder, obstruct and defeat  the due course of justice in order to deny  Plaintiffs equal protection under the law.

154.

In addition to Defendants' unlawful demotion of the  Plaintiffs r eferenced above, in furtherance of the  conspiracy referenced in Pars. 94-96,    Defendants committed a host of other retaliatory acts intended to punish and injure the Plaintiffs because  of  their  complaints  of  unlawful  race,  age  and  gender  discrimination (including being parties in Civil Action File No. 1:05-CV-0083), and based on their political speech and affiliations.  These actions included:

(A)    deliberately placing the Plaintiffs identified in Par. 3  in harm's way and in risk of violent physical injury by way of:

1    requiring Plaintiffs to perform inmate supervision ("Correctional Officer") functions without necessary training or experience in performing that function;

2    requiring Plaintiffs to perform inmate supervision ("Correctional Officer") functions without required equipment, including a duty belt equipped with properly functioning radios and canisters of pepper spray;

-61-

3      marking and identifying the Plaintiffs to the jail inmate population as the "fired" deputies by forcing Plaintiffs to wear partial Deputy Sheriff uniforms (i.,e., their regular Deputy Sheriff uniforms minus their badges) while performing "Correctional Officer Duties", at a time when *real* Correctional Officers wore entirely different uniforms;

4      making it necessary for Plaintiffs to wear partial Deputy Sheriff uniforms in public, but without a badge, arrest powers, or a weapon, thereby exposing them to the risk of attack by a former arrestee or inmate with no means of self-defense;

5      Ordering and directing Plaintiffs' co-workers not to "watch their backs" when performing inmate supervision functions;

(B)   deliberately creating and imposing on the plaintiff an egregiously hostile work environment by way of threats,   repeated last-minute  repeated shift changes and changed off-days; repeated, abrupt changes in work assignments;   undue criticisms and demands,    and demeaning and humiliating work assignments;

( C)   Fabricating and disseminating false allegations of corruption and other

misconduct against the Plaintiffs, including allegations that they received "kickbacks" from vendors and providers of jail supplies and equipment;

(D)    initiating bogus and contrived "Internal Investigations" concerning the part-time employment of certain Plaintiffs, including Correctional Officer (nee Captain) Samuel Smith, with no cause or justification for such investigation;

155.

All of the actions described in Par. 154 were committed in furtherance of the racial and politically inspired conspiracy alleged above, were done to retaliate against the Plaintiffs for complaining of discriminatory employment practices, including the filing of EEOC charges, and were accomplished via the personal participation of the individual defendants and/or at their order and direction and/or with their knowledge , approval, ratification, condonation, and acquiescence. Said actions were also taken for the purpose of: (a) deterring the Plaintiffs, by intimidation and threat, from testifying freely, fully and truthfully in Civil Action File No. 1:05-CV-0083 and 2005-CV-16-8; (b) to injure the Plaintiffs for having initiated Civil Action File No. 1:05-CV-0083, ( c) to injure the Plaintiffs and their property for their having lawfully sought to enforce their rights to equal protection under the law;

and ( d) to  hinder, obstruct and defeat  the due course of justice in order to deny
Plaintiffs equal protection under the law.

### 156.

On or about February 2, 2005, this Court entered a Temporary Restraining
Order barring Defendant Hill from taking any personnel actions within the CCSO
until further Order of the Court.

### 157.

On or about February 3, 2005, Defendant Hill was found in Contempt of Court
for refusing to reinstate the Plaintiffs fired on January 3, 2005 to their former
positions, and was ordered to fully reinstate the Plaintiffs to their former positions on
pain of a $1000 per day fine.

### 158.

Defendant Hill finally purported to reinstate the Plaintiffs fired on January 3,
2005 to their former positions on or about February 10, 2005. Subsequent to that time
he and the other Defendants engaged in a blatant pattern of retaliatory actions against
the Plaintiffs including, but not limited to insulting, demeaning, and abusive work
assignments, diminution of Plaintiffs' duties, responsibility and authority; insulting,
demeaning and confrontational meetings; disparaging comments concerning

Plaintiffs' Counsel; barring Plaintiffs from attending a Department-wide social event, forcibly ejecting Plaintiff Garland Watkins' Wife from his Office. Said actions were intended to punish the Plaintiffs for their protests against Defendant Hill's unlawful employment practices, their filing of EEOC charges of discrimination/retaliation, their pursuit of this lawsuit, and to force them to quit their jobs.

159.

On or about January 3, 2005, without cause or justification, Defendants demoted and transferred Plaintiff Sherrie Martin from her former position as Administrative Secretary to the Sheriff, and replaced her with a black female, Pat Ruth. The reasons for said demotion/transfer was Plaintiff Martin's race, white, and her association with and support of the prior Sheriff, and some or all of the other Plaintiffs who likewise supported Sheriff Tuggle.

160.

Subsequent to January 3, 2005, Defendants demoted Plaintiffs J. Mitchell, M. Hill, K. Mitchell, and H. Watkins based on their race white (in the case of Plaintiff K. Mitchell, Asian/African American), their political affiliation, association and support of the prior Sheriff and members of his staff. The demotions of Plaintiffs M. Hill and K. Mitchell were further motivated by their gender, female, and in the case

of Plaintiffs M.Hill, her condition of Pregnancy.

161.

Subsequent to January 3, 2005, Defendants failed to consider Plaintiffs Martin

and H. Watkins for promotions to available positions, and instead appointed lesser

qualified black persons (Jackie Headley and Genevieve Prejean) to said positions.

Defendants took this action based on the race of Plaintiffs Martin and Watkins, white,

and based on their political affiliation, association and support of the prior Sheriff and

members of his staff.

162.

Subsequent to January 3, 2005, Defendants summarily and without cause

demoted Plaintiff Stan Owen from his position of Senior Chaplain to the position of

Chaplain, replacing him with a black female (Chaplain Reynolds). Said demotion

resulted in Owen being deprived of the County automobile that had previously been

assigned to him and the concomitant assignment of the vehicle to Reynolds. The

demotion of Owen was based on his race, white, and his political support of former

Sheriff Tuggle.

163.

Subsequent to January 3, 2005, Defendants failed to consider Plaintiff Kelly

-66-

Clair for promotion to the rank of Lieutenant, due to his race, white, instead promoting a lesser qualified black male, Ronald Gardiner.

164.

Subsequent to the filing of the initial   Complaint (January 21, 2005), Defendants engaged in additional race, age, and gender based discrimination and retaliatory conduct against the Plaintiffs (retaliation based on Plaintiffs' political affiliation and association, and retaliation  based on Plaintiffs'  protected protests against unlawful, racial, gender and age discrimination and unlawful retaliation, and retaliation intended to harass and intimidate witnesses and parties to litigation), directly affecting the term and conditions of their employment, including, but not limited to the following:

(A)  Subjecting the Plaintiffs to the direction and control of subordinate, "favored" officers (political supporters of Defendant Hill---including some of the Defendants, answerable only to Defendant Hill), thereby diminishing Plaintiffs' authority, prestige, and standing  within the Sheriff's Office and altering the terms and conditions of their employment;

(B)  Encouraging subordinate Officers, including CO/Major/Defendant Harris, CO/Captain/Defendant Antoine, CO/Lt./Hanner, CO-Sgt. Kidd, CO-Sgt. Carter, CO-Redding, and D/S Pieras, among others, to ignore Plaintiffs rank and authority, and to act in a disrespectful and insubordinate manner toward the Plaintiffs;

( C)   Transferring the position, duties, responsibilities and authority of Plaintiff Garland Watkins as Commander of the Internal Affairs Department  to CO/Cpt./Defendant Antoine and CO/Lt./Defendant Hanner;

(D)   Forcibly and physically  throwing Plaintiff Watkins' wife, Teresa, out of the Sheriff's office in a harassing, insulting, intimidating, threatening, hostile and oppressive manner, without cause, justification, or provocation;

(E)   Transferring many or most of the duties, responsibilities and authority of Plaintiffs Leontyne Daniel to others "favored" employees (ie, political supporters of Defendant Hill);

(F)   Engaging in harassing, insulting, intimidating, threatening, hostile and oppressive interrogations of Plaintiff Leontyne Daniel regarding a purported lack of work to do which, to the extent it existed, was the product of Defendants' own conduct;

(G)   Engaging in harassing, insulting, intimidating, threatening, hostile and oppressive interrogation of Plaintiff Angelo Daniel;

(H)   Deliberately excluding Plaintiffs from an otherwise Department-wide social event, for the obvious purpose of ostracizing the Plaintiffs from their colleagues within the Department;

(I)   Instituting a "log" requirement by which employees are forced to record in writing, on a daily basis, their activities and whereabouts while on duty—a requirement not in existence until Defendant Hill was held in contempt of Court and forced to return Plaintiffs to their *real* positions and rank (i.e., elevate them out of the degrading correctional officer positions to which Hill had previously consigned them);

(J)     Reducing the responsibility, authority, and standing of Plaintiffs Massengale, Bartlett and Maddox by way of (1) divesting them of their historic and settled authority to issue "Division Orders"—the formal means by which they manage their Divisions; (2) requiring, in contravention of longstanding practice and custom, that Massengale, Bartlett and Maddox wear military-style uniforms while on duty; and (3) transferring and reassigning Plaintiff Bartlett's administrative assistant/secretary, thereby divesting him of necessary manpower required for him to carry out his assigned duties and responsibilities;

(K)     Subjecting Plaintiffs Massengale, Bartlett, Maddox, and Glaze to (1) unreasonable and nearly impossible work assignments on little if any notice;

(L)     Subjecting Plaintiffs Massengale, Bartlett, and Maddox to harassing, insulting, intimidating, threatening, hostile and oppressive interrogations and tirades;

(M)     In bad faith requesting or initiating (or purporting to request or initiate), law enforcement investigations relative to Defendant Hill's false and bogus allegations of corruption, graft, kickbacks against the Plaintiffs, contrived for the purpose of covering up Hill's own unlawful conduct;

(N)     Denying all Plaintiffs who are "sworn" Peace Officers below the rank of Major consideration for promotion to the position of "Major" to which Defendant Hill has promoted Defendant Mark Harris;

(O)     Denying all Plaintiffs who are "sworn" Peace Officers below the rank of Captain consideration for promotion to the position of "Captain" to which Defendant Hill has promoted Defendant Jon Antoine;

(P)     Denying all Plaintiff who are "sworn" Peace Officers below the rank of Lieutenant consideration for promotion to the position of Lieutenant to which Defendant Hill has promoted Defendants Lindsay, Hanner, and

non parties Gardiner and Chitwood;

(Q) Denying all Plaintiffs who are "sworn" Peace Officers below the rank of Sergeant consideration for promotion to the position of "Sergeant" to which Defendant Hill has promoted non party Frank Craddock;

®) Denying Plaintiffs who are not sworn Peace Officers consideration for promotion to the position of Deputy-I to which Defendant Hill has promoted non parties R. Redding; B. Everett; J. Stevens, and O.Bostic;

(S) Denying all Plaintiffs consideration for formal police and law enforcement training at Department expense, which training was instead provided to non-Defendant F. Ethridge;

(T) Denying all Plaintiffs not already assigned a Department automobile, consideration for the assignment of such vehicle, when vehicles have been assigned by Defendant Hill to Defendants Harris, Antoine, Lindsay, Hanner, Antoine, and non-Defendants F. Ethridge; Redding and Pieras;

(U) Encouraging favored political supporter employees to disregard the Sheriff's Office Chain of Command;

(V) Depriving Plaintiffs of information critical to the performance of their duties and responsibilities, in hopes of setting Plaintiffs up for failure and thereby creating excuses/pretexts for disciplinary action

165.

All of the Plaintiffs named herein except Plaintiff Owen have filed charges of discrimination and retaliation with the U.S. Equal Employment Opportunity

Commission. All of the Plaintiffs except Plaintiffs Kelly Clair, Kimberly Mitchell and Owen have received Notices of Right to Sue from the EEOC and/or the U.S. Department of Justice. This Amended and Substituted Complaint is filed within 90 days of Plaintiffs' receipt of said notices. Accordingly, all Plaintiffs except Clair, K. Mitchell and Owen have satisfied all administrative prerequisites and conditions precedents to asserting claims under Title VII and/or the ADEA. Plaintiffs Clair, K. Mitchell and Owen will seek to supplement this Complaint so as to assert claims under Title VII upon receipt of their Notices of Right to Sue.

166.

As a consequence of the unlawful conduct described herein, Plaintiffs Fallins, Lumpkin, and C. Glenn have been constructively discharged from their employment with the Defendants by virtue of the objectively and subjectively hostile and intolerable work conditions and environment created by the Defendants and their egregious acts of misconduct detailed herein.

167.

As a consequence of Defendants' unlawful actions, Plaintiffs have suffered lost wages, and benefits of employment, including diminished retirement benefits.

-71-

168.

As a consequence of Defendants' unlawful actions, Plaintiffs have suffered physical injury and severe mental and emotional distress, including but not limited to humiliation, embarrassment, sadness, depression, anxiety, lost sleep and appetite.

169.

As a consequence of Defendants' unlawful actions, including but not limited to bogus and defamatory allegations of corruption and other misconduct, Plaintiffs have suffered damaged reputations and diminished standing in the community.

170.

As a consequence of Defendants' unlawful conduct, Plaintiffs have lost other part-time, security-related jobs due to their not being permitted to carry firearms, due to their loss of arrest powers, and due to their inability or wear their uniforms they would be permitted to carry and wear had Plaintiffs not been fired and later demoted.

171.

No competent public official in the position of the Defendants could have reasonably believed at the time the foregoing events were occurring that the actions complained of herein were lawful.

172.

Defendants, based on clearly established law, knew at the time they committed the acts described herein that such acts were unlawful, and were in direct violation of Plaintiffs' First Amendment rights of free speech and association,  their Fourteenth Amendment rights to be free of unlawful race discrimination and right to Due Process of Law,  and their Fourth Amendment rights to be free from unlawful search and seizure.

173.

All the actions complained of herein were committed under color of state and local law.

174.

All of the actions complained of herein were taken pursuant to the policy and custom of Clayton County, Georgia, including but not limited to Clayton County Civil Service Rule 9.106, and/or were committed/approved by individuals possessed of such authority so as to properly attribute liability   to Clayton County, Georgia under 42 U.S.C. §1983.

175.

All of the actions complained of herein were taken pursuant to the policy and

custom of the Clayton County Sheriff's Office and/or were committed/approved by individuals possessed of such authority so as to properly attribute liability to the Clayton County Sheriff's Office under 42 U.S.C. §1983.

### 176.

All of the actions complained of herein were committed with the personal participation of the individual defendants, or at their direction, or with their knowledge, approval, ratification and/or acquiescence.

### 177.

The conduct on the part of the individual defendants alleged herein was willful, deliberate, p urposeful, malicious and motivated by spite, bad faith and unlawful discriminatory and retaliatory animus.

### 178.

The CCSO has adopted and operates pursuant to certain written rules and regulations.

### 179.

CCSO Rule No. 7.47 ("Media Releases") provides in pertinent part as follows:

> Only authorized personnel of this Sheriff's Office shall release or give out any information or official reports to news media or any other persons, concerning any matter

-74-

this Sheriff's Office is involved. Press releases and interviews will be conducted by a designated Public Information Officer named by the Sheriff or Chief Deputy.

180.

CCSO Rule No. 7.48(A) ("Public Criticism") provides in pertinent part as follows:

Public criticism of departmental operations or personnel can undermine the public confidence in law enforcement and adversely affect morale and good order. Accordingly, employees are required to express either orally or in writing any work-related criticism to their immediate supervisor, through the "chain of command....

181.

CCSO Rule No. 7.48(B)("Public Criticism) provides in pertinent part as follows:

Personnel of the Sheriff's Office are strictly forbidden from criticizing the official acts of their superior officers.

182.

CCSO Rule No. 7.48(C)("Public Criticism") provides in pertinent part as follows:

No Deputy or superior officer of the Sheriff's Office, who has been changed from one Watch to another by his Superior officer shall complain of such change to any person other than his immediate Superior Officer for the purpose of getting changed back to the Watch fro which he/she has been changed or removed, nor shall he/she

induce or encourage citizens to intercede by petition or otherwise with his/her Superior officers in an effort to secure such change. Any Deputy or Superior Officer who violates these rules will be deemed guilty of insubordination.

### 183.

CCSO Rules 7.47 and 7.48 bar, in advance, speech, petition and association activities protected by the First Amendment to the United States Constitution and therefore constitute an unlawful prior restraint.

### 184.

Defendants, acting in concert and in furtherance of the conspiracy alleged herein, have explicitly threatened to discipline some of the Plaintiffs, including Correctional Officer (nee Major) Mike Maddox, for allegedly violating Rules 7.47 and/or 7.48.

### 185.

Defendant threats of disciplinary action are for the purpose of retaliating against the Plaintiffs for their exercise of rights protected by the First, Fourth, and Fourteenth Amendments, and for the additional purpose of obstructing justice and harassing, intimidating and injuring parties and/or witnesses in Civil Action File No. 1:05-CV-0083 and 2005-CV-16-8.

## SUBSTANTIVE ALLEGATIONS

## COUNT ONE: 42 U.S.C. §1983 VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS OF FREE POLITICAL SPEECH AND ASSOCIATION

186.

Defendants' actions in firing, demoting, and otherwise mistreating the Plaintiffs as alleged herein-----motivated by the desire to punish Plaintiffs for: (a) expressing their political support for Defendant Hill's political opponents and/or rival candidates, and/or (b) failing or refusing to support Hill's candidacy for office-----constitute violations of Plaintiffs' First Amendment rights to freedom of speech, association, and political affiliation, and is actionable via 42 U.S.C. §1983.

## COUNT TWO: 42 U.S.C. §1983 VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHT OF INTIMATE/FAMILIAL ASSOCIATION

187.

Defendants' actions in firing and otherwise mistreating Plaintiffs A. Daniel; L. Daniel; Lumpkin, and Eckler----based on their protected intimate and/or familial associations as enumerated herein----constitute violations of their First Amendment right to freedom of association, and is actionable via 42 U.S.C. §1983.

## COUNT THREE: 42 U.S.C. §1983 VIOLATIONS OF PLAINTIFFS' FIRST AMENDMENT RIGHT OF FREE ASSOCIATION FOR PURPOSES OF COLLECTIVE ACTION, ADVOCACY AND TO PROVIDE MUTUAL AID, SUPPORT AND COMFORT.

188.

Some or all of the Defendants abusive treatment of the Plaintiffs subsequent

to January 3, 2005, including but not limited to Plaintiffs' summary demotions on

January 13, 2005, was motivated by Defendants' desire to punish Plaintiffs for

forming a group and engaging in concerted and collective action for the purpose of

revealing Defendants' misconduct in office; to protest against said unlawful conduct;

to Petition their government; and to provide mutual aid support. Such retaliatory

actions on the part of the Defendants constitute a violation of Plaintiffs' First

Amendment right of free speech and association.

## COUNT FOUR: 42 U.S.C. §1983 VIOLATION OF PLAINTIFFS' RIGHTS TO BE FREE FROM UNLAWFUL RACE DISCRIMINATION
189.

Defendants' race-based terminations of Plaintiffs' employment and the other

race-based misconduct directed at the Plaintiffs as enumerated herein, including but

not limited to Plaintiffs' summary firings, demotions, and hostile-work-environment

constitute violations of Plaintiffs' Fourteenth Amendment right to be free from

unlawful race discrimination, and is actionable via 42 U.S.C. §1983.

## COUNT FIVE : 42 U.S.C. §1981 RACE DISCRIMINATION

190.

The actions of the individual defendants in discriminating against the Plaintiffs----firing them and otherwise mistreating them for racial reasons as alleged above-----constitute violations of 42 U.S.C. §1981 for which the individual defendants are liable to the Plaintiffs for special, general and punitive damages.

## COUNT SIX: 42 U.S.C. §1981 RETALIATION

191.

The actions of the individual defendants in retaliating against the Plaintiffs for complaining of unlawful race discrimination as alleged herein constitute violations of 42 U.S.C. §1981 for which the individual defendants are liable to the Plaintiffs for special, general, and punitive damages.

## COUNT SEVEN: 42 U.S.C. §1983 GENDER DISCRIMINATION

192.

Defendants' gender-based terminations of Plaintiffs S. Glenn; Lumpkin; Cash; Nelson; L. Daniel; Richards and Eckler and other misconduct directed at them as detailed herein, and gender based demotions of Plaintiffs M. Hill and K. Mitchell, constitute of violations of their rights under the Equal Protection Clause of the

Fourteenth Amendment and actionable via 42 U.S.C. §1983.

## COUNT EIGHT:
## (Title VII--Race and Gender Discrimination And Retaliation)
193.

Defendants (a) Clayton County; and/or (b) the Clayton County Sheriff's Office; and/or ( C) Defendant Hill, in his Official Capacity as Sheriff of Clayton County, and/or (d) the State of Georgia---either individually, collectively or in some combination, are, Plaintiffs' "employer(s)" within the meaning of Title VII, and are jointly and severally liable to the Plaintiffs under Title VII of the Civil Rights Act of 1964 for unlawful race and gender discrimination and retaliation, based on the illegal firings, demotions, failures to promote, and other adverse actions described herein.

## COUNT NINE
## (Hostile Work Environment Under Title VII)
194.

The actions of the Defendants asserted herein, deliberately caused a subjectively and objectively hostile work environment based on racial animus and unlawful retaliatory intent, thereby violating Title VII of the Civil Rights Act of 1964.

## COUNT TEN:
## (ADEA---Age Discrimination And Retaliation)

195.

Defendants (a) Clayton County; and/or (b) the Clayton County Sheriff's Office; and/or ( C) Defendant Hill, in his Official Capacity as Sheriff of Clayton County, and/or (d) the State of Georgia---either individually, collectively, or in some combination, are Plaintiffs' "employer(s)" within the meaning of the ADEA, and are jointly and severally liable to the Plaintiffs over the age of 40 under the ADEA for the age discrimination and retaliation-based conduct alleged herein;

## COUNT ELEVEN
## (Hostile Work Environment Under the ADEA)

196.

The actions of the Defendants asserted herein deliberately caused a subjectively and objectively hostile work environment based on age and unlawful retaliatory intent, thereby violating the ADEA.

## COUNT TWELVE: 42 U.S.C. §1983 VIOLATION OF PLAINTIFFS' RIGHT TO PROCEDURAL DUE PROCESS: PROPERTY INTEREST

197.

Pursuant to governing state and local law, Plaintiffs could lawfully be discharged or demoted only for cause, and therefore possessed property interests in their continued public employed.

198.

Defendants' summary termination of plaintiffs employment (deprivation of their property interest in employment), and Defendants' summary demotions of the Plaintiffs without advance notice as to the reasons, without an explanation as to the evidence supporting such reasons, and without any opportunity to be heard constitutes a violation of Plaintiffs' Fourteenth Amendment rights to procedural due process, and is actionable under 42 U.S.C. §1983.

## COUNT THIRTEEN : 42 U.S.C. §1983 VIOLATION OF PLAINTIFFS' RIGHT TO PROCEDURAL DUE PROCESS: LIBERTY INTEREST

199.

Defendants' termination of Plaintiffs' employment and subsequent demotions of the Plaintiffs—done contemporaneously with Defendants' false, scurrilous and defamatory allegations of corruption and dishonest-----deprived Plaintiffs of their reputation and their  liberty without due process of law. Such deprivation is actionable under 42 U.S.C. §1983.

## COUNT FOURTEEN: VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHT TO BE FREE FROM UNLAWFUL <u>SEARCH AND SEIZURE</u>

200.

Defendants' seizure of Plaintiffs' personal property at the time of Plaintiffs' terminations (and prolonged retention of said property thereafter), and Defendants' contemporaneous seizure of Plaintiffs' persons and accompanying involuntary restriction of their freedom of movement constituted a violation of Plaintiffs' Fourth Amendment rights to be free from unreasonable search and seizure.

## COUNT FIFTEEN: 42 U.S.C. §1983 CONSPIRACY TO VIOLATE PLAINTIFFS' FIRST, FOURTH AND FOURTEENTH <u>AMENDMENT RIGHTS</u>.

201.

Both before and after January 3, 2005, Defendants reached an agreement and plan to violate Plaintiffs' First Amendment rights of Free Speech and Association, Plaintiffs' Fourteenth Amendment rights to Due Process of Law and Equal Protection under the law, and Plaintiffs' Fourth Amendment Rights to be from unlawful search and seizure, thereby participating in a Conspiracy, which conspiracy was actually put into action and consummated via Plaintiffs' unlawful terminations and other mistreatment set forth herein. Said conspiracy is actionable under 42 U.S.C. §1983.

-83-

## COUNT SIXTEEN: 42 U.S.C. §1985(3) CONSPIRACY TO VIOLATE PLAINTIFFS' FOURTEENTH AMENDMENT RIGHTS TO BE FREE FROM UNLAWFUL RACIAL DISCRIMINATION.

202.

Both before and after January 3, 2005, Defendants reached an agreement and plan to violate Plaintiffs' constitutional right to be free from unlawful racial discrimination, thereby participating in a Conspiracy, which conspiracy was put into action and consummated via Plaintiffs' unlawful terminations, demotions, and other mistreatment as set forth herein. Said conspiracy included and includes both persons employed in the CCSO and/or Clayton County, Ga., and persons not employed in the CCSO or Clayton County, Ga. Said conspiracy is actionable under 42 U.S.C. §1985(3).

## COUNT SEVENTEEN: 42 U.S.C. §1985(2) CONSPIRACY TO OBSTRUCT JUSTICE, AND TO INTIMIDATE PARTIES AND WITNESSES.

203.

Defendants' actions in firing, demoting and otherwise mistreating the Plaintiffs as alleged herein for the purpose of harassing and intimidating parties and witnesses to Civil Action File No. 1:05-CV-0083 and 2005-CV-16-8 constitutes a violation of 42 U.S.C. §1985(2).

## COUNT EIGHTEEN:   42 U.S.C. §1983 UNLAWFUL PRIOR RESTRAINT ON SPEECH IN VIOLATION OF THE FIRST AMENDMENT

204.

CCSO Rule Nos. 7.47 and 7.48 constitute unlawful prior restraints on protected speech in direct violation of the First Amendment and are actionable under 42 U.S.C. §1983.

## COUNT NINETEEN: FEDERAL RICO: 18 U.S.C. §1961

205.

The actions of the Defendants identified in Pars. 3, 94-97; 101, 147, 154 and 159-164 demonstrate that  the (a) defendants committed two or more unlawful "predicate acts" within a ten-year time span; (b) the predicate acts were related to one another; and (3) the predicate acts demonstrate criminal conduct of a continuing nature, thereby engaging in a pattern of racketeering activity over a substantial period of time, in violation of 18 U.S.C. §1961.

## COUNT TWENTY: INTENTIONAL INFLICTION OF OF EMOTIONAL DISTRESS

206.

The conduct of the individual defendants' conduct was extreme and outrageous, and was intended to and did cause Plaintiffs to suffer severe emotional

distress. Further, such conduct was the product of malice, oppression, spite and ill will. The individual defendants have therefore committed the tort of Intentional Infliction of Emotional Distress under Georgia law.

### COUNT TWENTY-ONE: DEFAMATION (LIBEL/SLANDER)

207.

Subsequent to Plaintiffs' terminations, the individual  Defendants have made false and defamatory statements and accusations of misconduct against the Plaintiffs, including false allegations of corruption and dishonesty, both verbally and in writing. Said false allegations were accomplished with actual malice, and  have caused irreparable  injury  to  Plaintiffs'  reputations  and  standing  in  the  community. Defendants have therefore committed the torts of libel and slander under Georgia law.

### COUNT TWENTY-TWO:  FALSE ARREST AND FALSE IMPRISONMENT

208.

In carrying out their plot to unlawfully terminate the Plaintiffs,  the individual Defendants, without probable cause or justification, and  in a deliberately menacing fashion,  forced and compelled Plaintiffs to restrict their movements and freedom of movement, thereby committing the tort of false imprisonment under Georgia law and

42 U.S.C. §1983.

## COUNT TWENTY-THREE: ASSAULT

209.

By causing Plaintiffs, without cause or justification, to be surrounded by menacing armed guards, by restricting Plaintiffs' movement and commanding their silence, and by posting Snipers on the roof of the jail with orders to use deadly force, Defendants put Plaintiffs in reasonable fear of their safety and well-being, and thereby committed the tort of assault.

## COUNT TWENTY-FOUR: CONVERSION

210.

Defendants, acting without probable cause or justification, confiscated Plaintiffs' personal property, and despite repeated demands, refused to return same. Defendants have therefore committed the tort of conversion under Georgia law.

## COUNT TWENTY-FIVE: VIOLATION OF RIGHTS CONFERRED UNDER THE GEORGIA CONSTITUTION

211.

The actions of the Defendants alleged above constitute violations of the Georgia Constitution, including violation of Plaintiffs' Due Process rights to notice

and hearing,   Equal Protection rights to be free from unlawful r ace a nd gender discrimination,   freedom to be free from unreasonable search and seizure, and First Amendment rights of Free Speech, Petition, and Association.

## COUNT TWENTY-SIX: GEORGIA RICO

### 212.

The actions of the Defendants identified in Pars. 3, 94-97; 101, 147, 154 and 159-164 demonstrate that   the (a) defendants committed two or more unlawful "predicate acts" within a ten-year time span; (b) the predicate acts were related to one another; and (3) the predicate acts demonstrate criminal conduct of a continuing nature, thereby engaging in a pattern of racketeering activity over a substantial period of time, in violation of O.C.G.A. §16-4-4.

## COUNT TWENTY-SEVEN: DECLARATORY JUDGMENT

### 213.

The law is clearly established that CCSO Rules 7.47 and 7.48 constitute unlawful prior restrains on protected speech. Defendant Hill, however, has explicitly threatened to apply such rules to the Plaintiffs. There therefore exists a controversy so the parties as to the constitutionality, both facially and as applied,   and the parties are in need of a judicial pronouncement on the issue in order to guide their future

conduct.

### 214.

Plaintiffs contend, and Defendant Hill denies that the actions of Defendant Hill alleged herein were accomplished in his role as an Officer of Clayton County, Ga., and were not accomplished as an Officer of the State of Georgia or as a result of any duty imposed on him by the State. There exists, therefore, a justiciable controversy between the parties, the resolution of which will determine the applicability or non-applicability of the Eleventh Amendment insofar as the claims against Sheriff Hill in his Official Capacity and/or the Clayton County Sheriff's Office are concerned, and the parties are in need of a judicial pronouncement in order to guide their future conduct.

### 215.

Plaintiffs contend, and Defendants Hill and Clayton County deny that Plaintiffs are employees of Defendant Clayton County, and that Defendant Clayton County is their "employer" for purposes of Title VII and the ADEA. There exists, therefore, a justiciable controversy between the parties, the resolution of which will determine which of the various Defendants is potentially liable under Title VII and/or the ADEA, and the parties are in need of a judicial pronouncement in order to guide their

future conduct.

## COUNT TWENTY-EIGHT: O.C.G.A §13-6-11

217.

Defendants' conduct as set forth herein was done in bad faith, has been stubbornly litigious, and has put Plaintiff to unnecessary time and trouble, thereby authorizing an award of attorney's fees and costs of litigation to the Plaintiffs.

**WHEREFORE,** Plaintiffs demand judgment as follows:

(a)     that the Plaintiffs recover of the Defendants, jointly and severally, special, general, treble and liquidated damages as proven at trial;

(b)     that Plaintiffs recover prejudgment interest;

(c)     that the Plaintiffs recover punitive damages against the individual defendants;

(d)     that the Plaintiffs recover their costs and reasonable attorney's fees pursuant to 42 U.S.C. §1988, Title VII; the ADEA; and State law, including O.C.G.A. Section 13-6-11;

(e)     that the Court issue a Preliminary and Permanent Injunction compelling Defendant Hill to discontinue the unlawful employment practices alleged herein;

-90-

(F)     that the Court enter a Declaratory Judgment to the effect that (1) CCSO

Rules 7.47 and 7.47 constitute unlawful prior restraints on speech which

violate the First Amendment, and are null and void; (2) Clayton County,

Ga., and/or The Clayton County Sheriff's Office is/are Plaintiffs'

"employer(s)" for purposes of Title VII of the Civil Rights Act of 1964

and/or the ADEA; and (3) Defendant Hill, in his "official capacity" as

Sheriff of Clayton County, in making employment decisions and taking

related actions within  the CCSO, acts for and on behalf of Clayton

County as a County Officer, and is therefore not entitled to Eleventh

Amendment immunity; (4) The CCSO is a proper party and is not

entitled to Eleventh Amendment immunity;

(k)     that the Plaintiff have such further relief as the Court may deem just and

proper;

(h)     trial by jury

[signature on following page]

-91-

Respectfully submitted this 11th day of April, 2005.

Harlan S. Miller
Georgia Bar No. 506709


MILLER, BILLIPS & ATES, P.C.
730 Peacthree Street
Suite 750
Atlanta, Georgia 30308
(404) 969-4101
(404) 969-4141 (fax)