IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| H.D. MASSENGALE; et. al., | : |
| | :     CIVIL ACTION FILE |
| Plaintiffs, | :     NO. 1:05-CV-0189-TWT |
| | : |
| vs. | :     **JURY TRIAL DEMANDED** |
| | : |
| VICTOR HILL, et al, | : |
| | : |
| Defendants. | : |

**UNSWORN DECLARATION UNDER PENALTY OF PERJURY
OF MAJOR LARRY A. BARTLETT PURSUANT TO 28 U.S.C §1746**

1.

My name is Larry A. Bartlett. I am employed as a Major within the Clayton Sheriff's Office. I am also a Plaintiff in the above-referenced Civil Action.

2.

I offer this Declaration in support of the pending Motions For Show Cause order (directing Defendant Hill to show cause why he should not be held in contempt of Court), and for the purpose of providing information to the Court and the public concerning: Sheriff Hill's repeated coercive statements of indifference to and

contempt for the authority of the Court and the Clayton County Board of Commissioners.

3.

On January 18, 2006, I learned that there had been a breach of security at the Clayton County Courthouse facility (jail entrance) wherein a person carried a weapon through a security checkpoint undetected.

4.

After I arrived at work, I was asked to meet with Judge Deborah Benefield concerning the breach of security. By that time, Judge Benefield had already canceled Court activities scheduled for that day due to the breach of security.

5.

Judge Benefield expressed to me her concern (and that of the other Judges) over the fact that they had received no formal communication from the Sheriff's Office concerning the breach of security. Judge Benefield then asked that I pass along to the Sheriff the Judges' concerns that neither they no their staff had been formally notified about the incident.

6.

I then left and went to office of Chief Deputy Cassells to advise him of what I had been told by Judge Benefield. When I spoke to Chief Cassells (on his cell

phone), I told him of Judge Benefield's comments. I then left and went back to my office.

7.

While in my office, I received a call from Chief Cassells. He told me to be in the Sheriff's Office at 11am to meet with Sheriff Hill.

8.

A short time later (at approximately 10:35 A.M.), I was meeting with two people in my office (but had just taken a telephone call). At that time, Sheriff Hill and his Legal Advisor (Andres Marierose) burst into my office and ordered the people out of my office, and ordered me to "GET OFF THE PHONE".

9.

Mr. Marierose then shut the door and Sheriff Hill began to berate me, telling me that I "work for him and not the Judges." Sheriff Hill was extremely rude and belligerent, and repeatedly stated that I don't work for the Judges. I explained to Sheriff Hill that I understood and was aware of who I worked for, and that I had merely relayed a message from a Judge at the Judge's request.

10.

Sheriff Hill then told me that I was not to meet with any of the Judges, even if so requested or directed to do so by them. Sheriff Hill went on to say that if the

Judges wanted to speak with me (Major Bartlett), I was to tell the Judge(s) that they had to get the Sheriff's approval to do so.

11.

Sheriff Hill also told me that my subordinates (specifically including the Lt. Chitwood, the Commander of the Court Services Unit) were to ignore any Judge's request to meet with them until and unless Sheriff Hill approved the request.

12.

Sheriff Hill stated repeatedly to me during this meeting that "no judge tells him what to do" and "they don't control the security of the courthouse."

13.

I then explained to Sheriff Hill that this Order presented a major predicament, since if I was requested or directed to appear in a Judge's office (or Courtroom) and I simply ignored that request, I might be subject to a Citation Of Contempt of Court, and be subject to arrest and being jailed.

14.

Sheriff Hill did not respond to this concern, and instead ordered me to go and tell the judges exactly what he said.

15.

Soon thereafter, I proceeded to Judge Benefield's office (along with Capt.

Tommy Glaze), and met with Judge Benefield. At that time, I reiterated, as ordered by Sheriff Hill, his message that Superior Officers in the Sheriff's Office were under orders not to meet with any of the Judges absent Sheriff Hill's advance approval.

16.

Soon after my meeting with Judge Benefield, I was called in for a meeting in the Sheriff's Office. Also present were Chief Deputy Cassells and Major Michael Maddox.

17.

Sheriff Hill then stated to Major Maddox and myself that both of us work for him, and that "no judge tells him what to do."

18.

Sheriff Hill also stated that once again we were not to meet with any of the Judges without his advance approval.

19.

Sheriff Hill stated to Major Maddox and to me that he "doesn't care what any judge, court order or Commissioners say, in fact I pay as much attention to those judges and I do that dog in my neighbors yard."

20.

This is not the first time I had heard Sheriff Hill make this reference to the

Judges/Commissioners and "his neighbor's dog". To the contrary, he previously used essentially the same language in expressing his feelings about Clayton County Board of Commissioners.

21.

Before leaving the Sheriff's Office, he stated one more time that "no one could tell him what to do and that includes the judges."

22.

On January 23, 2006, I was present during a Superior Officers' meeting with Sheriff Hill and a number of other persons (Chief Deputy Cassells; Major Maddox; Captain S.W. Smith; and Lieutenants K.T. Smith; Deanne Cash, Charlotte Nelson; Robert Sowell; Chaplain Reynolds; and Lawrence Ethridge Mark Harris ).

23.

During the January 23, 2006 meeting, Sheriff Hill made a number of highly disturbing statements. These statements included the following:

(A)  if the Clayton County Board of Commissioners created a Marshal's Service, he (the Sheriff) would post and deploy the Sheriff's Office "SWAT TEAM" and "COBRA UNIT" to prevent members of the Marshal's Service from entering the Courthouse if they (members of the Marshal's Service) were equipped with weapons;

(B)  he was in charge of security at the Courthouse, and "no one was going to take that away from him";

(C)  if any Sheriff's Office Superior Officers were summoned to meet with Superior or State Court Judges, or members of the Board of Commissioners, that they (the Superior Officers) were to refuse to do so absent his advance approval;

(D)  if we (the Superior Officers) were threatened with sanctions (including contempt sanctions of the Court for refusing any such meeting), we were to "call their bluff", and that the Sheriff's Office would then "appeal" any such sanctions;

(E)  he (the Sheriff) did not care what the Judges or the Board of Commissioners did or tried to do, and that he cared about the Judges and the Board of Commissioners "about as much as [he] cares about [his] neighbor's dog.";

(F)  he was tired of people "threatening him" about his office and how to run it, and that this year, he would "call all the Bluffs....";

(G)  he intended to conduct an Internal Affairs investigation to determine who had told the Superior and State Court Judges about a recent security breach in which a weapon made it through a security checkpoint in the

Courthouse facility (jail entrance) and that whoever disclosed that information to the Judges would be fired.

24.

Sheriff Hill's comments during the January 23 meeting were clearly intended to intimidate and coerce Superior Officers in the Sheriff's Office, by way of threatening them with the loss of their job should they communicate with elected County and State Officials, and by reiterating that Sheriff Hill had no regard for the pronouncements of the Court or the Clayton County Board of Commissioners.

25.

During the meeting, Sheriff Hill also stated that he was tired of hearing rumors "about the Governor", and went on to say that "he saw the Governor last week and he waved at him", and that he said he "didn't care what was filed in the courts because this was the year of calling bluffs."

26.

The Sheriff's statements concerning deploying the SWAT TEAM and the "COBRA UNIT" to forcibly turn away members of any new Marshal's Service were of particular concern to me and were especially disturbing, since Courthouse security is one of my areas of responsibility, and the Sheriff's comments directly raised the

possibility of a highly dangerous and volatile situation in which armed Sheriff's Deputies and Marshal's Service Officers confronted one another with conflicting orders in the public entryway to the Courthouse.

27.

Due in part to the Sheriff's statements concerning "firing" the person who had advised the Judges of the recent security breach (and due to other threatening and coercive actions of Sheriff Hill since taking office) I did not raise my objections at that time.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this___day of February, 2006.

_____
Larry A. Bartlett,
Major, Clayton County Sheriff's Office