IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| H.D. MASSENGALE; et. al., : | |
| Plaintiffs, : | CIVIL ACTION FILE NO. 1:05-CV-0189-TWT |
| vs. : | **JURY TRIAL DEMANDED** |
| VICTOR HILL, et al, : | |
| Defendants. : | |

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY OF CAPTAIN WILLIAM T. GLAZE PURSUANT TO 28 U.S.C. §1746

1.

My name is William T. Glaze. I am employed as a Captain within the Clayton Sheriff's Office. I am also a Plaintiff in the above-referenced Civil Action.

2.

I offer this Declaration in support of the pending Petition Motions for Show Cause Order (directing Defendant Hill to show cause why he should not be held in contempt of Court), and for the purpose of providing information to the Court

-1-

concerning: (a) Sheriff Hill's repeated coercive statements of indifference to and contempt for the authority of the Court and the Clayton County Board of Commissioners; and (b) Sheriff Hill's requiring me to provide false information to various Judges and other Officers of the Court.

3.

On September 19, 2005, I was present at a meeting presided over by Sheriff Victor Hill.

4.

The other persons in attendance at this meeting included Chief Deputy Cassells; Major Michael Maddox; Lt. Deeann Cash; Lt. K.T. Smith; Capt. Hall; and Chaplain Reynolds.

5.

During the course of the meeting, Sheriff Hill threatened to fire all of the assembled jail command staff, with the exception of myself.

6.

During the course of the meeting, Sheriff Hill made the following statement:

"You all know by now that I'm not afraid of any lawsuit. I don't care what any Judge, Court, Commissioner or Attorney says about what I do. I don't give a damn. I am going to run this department the way I want to."

7.

On February 1, 2006, I was in attendance at a meeting with Sheriff Victor Hill, Chief Deputy William T. Cassells, Lieutenants David Ward, and Lucretia Chitwood. During that meeting, Sheriff Hill directed that we were to implement a dress code applicable to the Courthouse facility.

8.

In response, I explained that the dress code needed to be in writing in order that it could be enforced by security personnel in the Courthouse.

9.

During the February 1 meeting, I explained that a dress code was already in effect for persons wishing to visit the Jail portion of the facility. I then inquired of Chief Deputy Cassells as to whether he wished to use the jail dress code as a model for the new dress code the Sheriff had ordered to be implemented in the Courthouse portion of the facility. Chief Cassells directed me to provide him with a copy of that dress code, which I did the next day.

10.

On Thursday, February 2, 2006, I discussed the dress code with Chief Cassells outside the door to his office. Sheriff Hill was standing nearby at the time--- approximately six (6) feet away from us.

During this discussion, and within Sheriff Hill's hearing, Chief Cassells directed me to change two aspects of the dress code. I stated that I would make the changes, and then provide the dress code to Lt. Lucretia Chitwood, Commander of the Court Services Section. After the changes were made as directed by Chief Cassells, I provided approximately six (6) copies of the dress code to Lt. Chitwood.

11.

The following Monday (February 6, 2006), I was in another meeting with Sheriff Hill and Chief Cassells. During that meeting, the subject of the dress code was again addressed. I inquired of Sheriff Hill as to what penal offense we should use to charge persons entering the courthouse if they refused to comply with the dress code. Sheriff Hill stated that such persons would not be charged, but would be barred from entry into the Courthouse.

12.

On Wednesday, February 8, 2006, I was summoned to Sheriff Hill's Office at 8:00 a.m. by Ms. Pat Ruth (Sheriff Hill's secretary). Ms. Ruth stated that the Sheriff wanted me in his office immediately. When I arrived at his office suite, I found that the Sheriff had not arrived yet, and I was told by Ms. Ruth to have a seat in the waiting area.

13.

I sat in the waiting area until 10:15 a.m. when the Sheriff ultimately arrived.

The Sheriff then went into the office of Chief Deputy Cassells. Approximately 10 minutes later he opened the door and called me into that office.

14.

Upon my entry into the Chief's Office, Sheriff Hill asked me if I had a copy of the dress code for the courthouse. I replied that I had a copy in my office but did not have a copy with me. Sheriff Hill then directed me to go get it. I then went to my office to retrieve a copy of the dress code.

15.

When I arrived back in the Chief's Office, I discovered that Sheriff's Office Legal Advisor Andres Marierose was also present in the office (along with Chief Deputy Cassells and Sheriff Hill). I handed the copy of the dress code to the Sheriff who then read it to himself.

16.

Sheriff Hill then asked me after reading the dress code who had told me to issue

it, and stated that the dress code was not what he had instructed. I then reminded the Sheriff of our prior discussion the week before, and reminded him that the dress code had been approved by Chief Deputy Cassells (in the Sheriff's presence) on Thursday, February 2.

17.

The Sheriff then handed the dress code to Legal Advisor Marierose, and stated to Mr. Marierose that he wanted him (Mr. Marierose) to look it over and see which portions of the dress code could lawfully be enforced. Mr. Marierose stated that he had already looked at the dress code. The Sheriff then asked again which portions of the dress code could be enforced. Mr. Marierose replied that none of the provisions could be enforced.

18.

Mr. Marierose then stated to Sheriff Hill that you cannot enforce a dress code on persons entering public buildings and went on to explain that you could not enforce anything more in a public building than what you could if you saw someone out on the

street. Sheriff Hill then directed Mr. Marierose to write something up, which Mr. Marierose said he could not do, because a dress code for the Courthouse would be difficult if not impossible to enforce.

19.

The Sheriff then told me that he wanted me to write an order and have it to him before the day ended. I asked him what he wanted it to say and he said that it was to simply say "no persons will be allowed to enter the courthouse who were inappropriately dressed."

20.

The Sheriff then asked me how the dress code had been distributed to employees in the Courthouse. I replied that I did not myself distribute the copies of the dress code, but that I had provided copies of the dress code (which had been approved by Chief Cassells in the presence of the Sheriff) to Lt. Chitwood.

21.

Sheriff Hill then ordered me to go to each office in the courthouse to collect all

copies of the dress code which had been distributed. The Sheriff further ordered me to to state to the persons in each office that:

> "this dress code was never approved by him(the Sheriff)
>
> and that I (Captain Glaze) had misinterpreted his orders and
>
> to apologize for any controversy this caused."

Sheriff Hill then said that I was to be sure to follows his orders directly as he would have people observing me while I did this and to be professional when doing so.

22.

Sheriff Hill's directive as to what I was to say to the persons from whom I collected the copies of the dress code explicitly required that I be untruthful (lie) to the affected personnel, including Superior Court Judges, State Courts Judges, Magistrate Court Judges, and other officers of the Court, in that:

(a) the dress code *had* been explicitly approved by the Chief Deputy (in the Sheriff's presence); and

(b) I had *not* "misinterpreted his orders" concerning the dress code, facts which, based on all the circumstances, the Sheriff knew when he gave me

these instructions.

23.

I then left Sheriff Hill's office and went each office in the courthouse repeating the false statements Sheriff Hill ordered me to make. In this regard, I went to the District Attorney's office and spoke to Jewell Scott and Todd Naugle, the Solicitor's Office (the Solicitor wasn't there so I left the message with the receptionist), Each Superior Court, State Court and Magistrate Judges office, the Clerk of the Superior Court (spoke directly to Linda Miller), and the State Court Clerk's Office (spoke to Brenda Smith).

24.

When I met with these persons, I carried out Sheriff Hill's orders to be untruthful—to lie to them—by telling them that the dress code had not been properly approved, and that the whole thing was "my fault."

25.

It is impossible to express the degree of humiliation and degradation caused by the Sheriff's requiring me to be untruthful to Judges and other Officers of the Court in telling them that the dress code had not been approved, and that I was to blame for

it being circulated in error.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this ___ day of February, 2006.

                             *[signature]*
                             William T. ("Tommy") Glaze,
                             Captain, Clayton County Sheriff's Office