BEFORE THE CLAYTON COUNTY CIVIL SERVICE BOARD
CLAYTON COUNTY, GEORGIA

IN RE: APPEAL OF LIEUTENANT    :
LEONTYNE ("TINA") DANIEL    :    APPEAL NO._____
                      :

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**I**     **INTRODUCTION**

This matter came on for hearing before the Clayton County Civil Service Board on November 2, 2005. All members of the Board were present and participated in the hearing. Both parties appeared and testified before the Board, and were represented by Counsel. Both parties presented the Board with documentary evidence (including Daniel Exhibits, marked as "Plaintiff's Exhibits" "1"-"46"), which were accepted by the Board without objection from either party. All witnesses were properly placed under Oath.

The question presented was whether there existed just cause to support Sheriff Victor Hill's April, 2005 termination of former Clayton County Sheriff's Office ("CCSO") employee Lt. Tina Daniel. Finding that Sheriff Hill lacked just cause to terminate Lt. Daniel the Board overturns and reverses the termination, and orders that Lt. Daniel be immediately returned to work with full back pay.

## II    <u>FINDINGS OF FACT</u>

1.

Sheriff Hill and Lt. Daniel were acquainted prior to Sheriff Hill's taking office on January 1, 2005. [Hearing Transcript ("HT") pp. 212-13.]

2.

According to Lt. Daniel, on more than one occasion prior to Victor Hill taking office, he asked Lt. Daniel out on dates. [HT-212; 252-54] Sheriff Hill denied that he asked Lt. Daniel out on dates prior his taking office. [HT-43-44]. Based on the Board's assessment of the relative credibility of these witnesses, including their demeanor during the hearing, the Board credits Lt. Daniel's testimony on this point, including her testimony that she declined Mr. Hill's requests for dates. [HT-212, 213].

3.

Lt. Daniel was employed in the CCSO when Sheriff Hill took office on January 1, 2005. [HT-214].

4.

Lt. Daniel, along with twenty-six (26) other CCSO employees (including Lt. Daniel's husband, Cpt. Angelo Daniel) were summarily fired by Sheriff Hill on his first business day in office (January 3, 2005). Daniel Exhibits "4"; "7".

-2-

5.

When asked to explain why he fired Lt. Daniel in January, 2005, Sheriff Hill gave several reasons [HT-83 to 89] that were flatly contradicted by the testimony of his Chief Deputy, William ("Tee") Cassells. [HT-163 to 169]

6.

Based in part on the contradictions between the testimony of Sheriff Hill and Chief Cassells concerning the purported justification for firing Lt. Daniel in January, 2005, and based on Chief Cassells's efforts to change his testimony after being made aware of its inconsistency with Sheriff Hill's testimony [HT-174 to 177]  the Board concludes that neither the testimony of Sheriff Hill nor the testimony of Chief Cassells was credible or believable  concerning why Lt. Daniel was fired in January, 2005—just 3 months before the firing at issue in this appeal.

7.

On January 4, 2005, Sheriff Hill was ordered to immediately  reinstate Lt. Daniel and the other  employees to duty in a TRO issued by Superior Court Judge Stephen Boswell. Daniel Exhibit "7".

8.

In the wake of her firing, on January 10, 2005,   Lt. Daniel, among others, initiated a federal civil rights suit against Sheriff Hill alleging, among other things,

race and gender discrimination. Sheriff Hill had knowledge of this suit not later than January 14, 2005. Daniel Exhibits "9" and "13".

9.

In the wake of her firing, on January 11, 2005, Lt. Daniel filed charges of gender and race discrimination against Sheriff Hill with the U.S. Equal Employment Opportunity Commission ("EEOC"). Daniel Exhibit "10".

10.

Rather than reinstating Lt. Daniel and the other employees fired on January 3, 2005 to their former positions as ordered by Judge Boswell, Sheriff Hill instead refused to allow Lt. Daniel and the other employees to return to work until on or about January 13, 2005, at which time  Sheriff Hill, rather than reinstating Lt. Daniel and the other employees,  instead summarily  demoted Lt. Daniel and the other employees to the entry level position of "Correctional Officer". [HT-97 to 98; 215-16;  Daniel Exhibit "10".]

11.

Based on Sheriff Hill's demotion of Lt. Daniel (and the other employees fired on January 3, 2005), Sheriff Hill  was found in Contempt of Court by Judge Ben Miller on February 3, 2005, and was ordered, on pain of a $1,000 per day fine, to actually "reinstate" Lt. Daniel to her former position. [Daniel Exhibit "18"]

12.

Days after being held in Contempt of Court, Sheriff Hill, purported to restore Lt. Daniel to her former position in the Sheriff's Office, but in fact did not do so. [HT- 215]

13.

At about the same time, on February 10, 2005, Sheriff Hill summoned Lt. Daniel to his office. When Lt. Daniel arrived, the following persons were present: Sheriff Hill, Chief Deputy Cassells, "Legal Advisor" Rene Andeas Marierose, and . Reginald Lindsay. [HT-74, 218-19]

14.

During the February 10, 2005 meeting, Sheriff Hill, in the presence of the other men identified above, interrogated Lt. Daniel for the asserted reason of ascertaining the the nature of the duties she performed. [HT-218 to 219]

15.

The only persons who testified before the Board concerning what occurred during the February 10, 2005 meeting were Sheriff Hill, Chief Deputy Cassells, and Lt. Daniel. Based on their respective demeanor and credibility, the Board credits the testimony of Lt. Daniel and rejects the testimony of Sheriff Hill and Chief Cassells as to what occurred during the meeting.

16.

The Board further concludes that that the manner in which Sheriff Hill conducted the February 10, 2005 meeting was insulting, accusatory, intimidating, and threatening. [HT-219; 221-222]

17.

The next day, February 11, 2005, Sheriff Hill again summoned Lt. Daniel to his office. [HT-223]

18.

The only persons who testified before the Board concerning what occurred during the February 11, 2005 meeting were Sheriff Hill, Chief Deputy Cassells, and Lt. Daniel. Based on their respective demeanor and credibility, The Board credits the testimony of Lt. Daniel and rejects the testimony of Sheriff Hill and Chief Deputy Cassells as to what actually occurred during the February 11 meeting.

19.

The Board finds the February 11 "meeting" was conducted in a deliberately intimidating and abusive fashion [HT- 222], and further finds that Sheriff Hill's claimed "reason" for calling the meeting in the first place (to ascertain the substance of Lt. Daniel's duties/responsibilities) to lack credibility, given his testimony that before firing Lt. Daniel in January, he had *previously* learned the nature of Lt.

Daniel's duties, and that before firing her in January, he had *previously* determined that Lt. Daniel carried those duties out in an unsatisfactory matter. [HT-83]

20.

On April 19, 2005, a hearing was held in the Clayton County Courthouse regarding Sheriff Hill's motion to recuse the Honorable Ben Miller from a case in which the issue was whether employees in the Clayton County Sheriff' Office are included under the County's Civil Service System. [HT-234] Lt. Daniel was not a party to that case. [HT-235]

21,

Prior to the April 19 hearing, Sheriff Hill had issued orders that all Superior Officers in Lt. Daniel's work unit were to make daily rounds of the Courthouse. [HT-233 to 234].

22.

On April 19, 2005, Lt. Daniel, in good faith, believed that she had been instructed by her immediate supervisor, Major Larry Bartlett, to check on the courtroom in which the motion to recuse was to be heard. [HT-110 to 111; 243 to 244]

23

In carrying out Major Bartlett's instructions, Lt. Daniel observed that a Judge

was present in the Courtroom, members of the media were present in the courtroom, and lawyers were present in the courtroom. [HT-234].

24.

Prior well-established protocol and practice in the Sheriff's Office required, under these circumstances, the presence of a unformed Deputy Sheriff.[HT-234].

25.

Based on these circumstances, Lt. Daniel, in good faith, determined that she was duty-bound to remain in the courtroom to provide security. [HT-247 to 248]

26.

Sheriff Hill claimed before the Board that it was improper for Lt. Daniel to be performing security in a courtroom during a proceeding in which she was potentially personally interested was being conducted. [HT-76] The Board rejects this testimony as unworthy of credence based on the undisputed evidence that, with Sheriff Hill knowledge and approval, Lt. Daniel had previously provided such services during another court proceeding in which both she and Sheriff Hill were present. [HT-235 to 237]

27.

Later that day, Sheriff Hill summoned Lt. Daniel into his office. Sheriff Hill testified that during that meeting, Lt. Daniel called Major Bartlett "a lying bastard."

-8-

[HT-66]

28.

Lt. Daniel did not, in fact, refer Major Bartlett in this fashion. [HT-244]

29.

During the April 19, 2005 meeting, Sheriff Hill told Lt. Daniel that she was "fired." [HT-241, 243]

30.

The next day, April 20, 2005, Lt. Daniel nonetheless returned to work [HT-242], and was once again fired. [HT-242], and was physically escorted from the premises.

31.

Sheriff Hill testified that one of the reasons Lt. Daniel was fired on April 20, 2005, was because she used profanity and referred to the Sheriff in a disrespectful fashion on April 19, 2005. [HT-39] Based on the parties' respective credibility, however, the  the Board concludes that Lt. Daniel did not in fact engage in such conduct. [HT-267 to 268]

32.

The Board further concludes that Sheriff Hill, when previously faced with a situation in which a subordinate has referred to a Superior Officer in a disrespectful

manner (i.e, a "a piece of shit"), Sheriff Hill took no disciplinary action whatever. [HT-102 to 103]

33.

The Board finds that the Notice of Disciplinary Action provided to Lt. Daniel on April 20, 2005, stating that her "chain of command" had recommended her firing, was an outright falsehood, since neither Lt. Daniel's immediate supervisor (Cpt. Glaze) nor Cpt. Glaze's supervisor (Major Bartlett) in fact recommended Lt. Daniel's termination. [HT-116,

34.

The Board further finds that the Sheriff's Office repeatedly failed to observe its own rules and regulations in regards to the various "Internal Affairs" investigations concerning Lt. Daniel's conduct. [Daniel Exhibit "26"; HT-59 to 61; 71-73]

35.

The Board concludes, based on all the evidence presented, that Lt. Daniel was dismissed by Sheriff Hill in April of 2005, not for good or just cause, but instead due to his displeasure over being accused of, and sued for, unlawful discrimination and retaliation by Lt. Daniel and others.

## III     Conclusions Of Law

36.

The various dismissals of Lt. Daniel were not for "good" or "just" cause, as defined by the 1994 Clayton County Civil Service Act and implementing regulations.

37.

Lt. Daniel is therefore entitled to immediate reinstatement, with full back pay.

**SO ORDERED this  7th  day of   December   , 2005.**

Henry "Nig" Estes, Chairman

David H. Johnson, Member

Don Gibbs, Member

Ed Huie, Member


Abstaining:

Helen Meadows, Member

Renee Bright, Personnel Director

-11-